STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. LEROY HOWARD, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 24, 1989—Decided August 7, 1989.

Before Judges KING, BRODY and ASHBEY.

*Warren W. Faulk* argued the cause for appellant (*Brown & Connery*, attorneys; *Warren W. Faulk*, of counsel and on the brief).

*John A. Mennite*, Assistant Prosecutor, argued the cause for respondent (*Richard E. Hickey*, III, Gloucester County Prosecutor, attorney; *John A. Mennite*, of counsel and on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

We granted defendant leave to appeal an order denying his motion to dismiss this murder indictment on the ground of double jeopardy. The trial judge had granted the State's mo-

tion for a mistrial, made during defendant's attorney's opening statement. Shortly thereafter the judge denied defendant's motion and discharged the jury. The issues are whether defendant had consented or waived objection to the mistrial and if not, whether there was a "sufficient legal reason and a manifest or absolute or overriding necessity" for the judge to have declared the mistrial. *N.J.S.A.* 2C:1–9d(1) and (3). We conclude that defendant had not consented to the mistrial, that there was no necessity at all to declare the mistrial, and that the order denying defendant's motion for dismissal of the indictment must therefore be reversed.

The unusual history of this case caused the problems that led the judge to declare the mistrial. The victim, a young woman, was killed in her home in December 1975 when defendant was 16 years old. He was immediately taken into custody by the police, but not indicted until 1984 and not tried until 1988. The delay between indictment and trial was caused by legal proceedings, including a prior appeal, in which defendant challenged the State's right to proceed to trial. He argued in those proceedings that the lengthy delay between the crime and the indictment denied him due process because an alleged alibi witness had died in the interim. He also argued that the State should be barred from introducing the results of a test that purported to establish that blood stains on his underwear were the same blood type as the victim's, whose blood was a different type from defendant's.[1] He complained that he could not confirm the test results because the State had destroyed the stains in the test.

The State's key witness was the victim's son Sam who allegedly saw the homicide and immediately identified defendant to the police as the killer. Sam was only 5 years old when his mother was killed, thereby raising a question as to his competence to testify. That issue was tried in the Juvenile and

---

[1]There is evidence that the killer had sexually assaulted the victim.

Domestic Relations Court shortly after defendant was taken into custody, when the State moved to have him tried as an adult. The judge who conducted the referral hearing in January 1976 ruled that Sam was not competent to testify. After the boy had testified and identified defendant in court, the judge found:

> ... I cannot be sure to a moral certainty that the boy does know either the importance of what he is saying or the importance of giving the right testimony rather than the wrong testimony. I cannot say to any degree of certainty that he is unduly subject to suggestion because I know of no way of measuring this. But the matter under consideration is far too serious for the Court to guess as to firstly, whether he knows what he is saying and secondly, the importance of saying only the truth. My personal information [inclination?] is, he does know what he is saying but I cannot say to a degree of certainty that he knows what will happen to him either in this world or the next if he should willfully or unwittingly tell an untruth. I, therefore, am reluctantly persuaded to the conclusion that his testimony should not be accepted.

The judge nevertheless referred the matter to the Law Division so that criminal proceedings could be brought against defendant as an adult.

The matter was presented to a grand jury without Sam's testimony or statements, which the State considered barred by the court's ruling that Sam was incompetent to testify. The grand jury declined to indict and defendant was released. Defendant contended in the later proceedings that the State intentionally withheld evidence of guilt from the grand jury to assure a no bill in order to keep the matter open until Sam became old enough to qualify as a witness. The State responded that it revived the matter years later because of the continuing interest in the case of a detective who had been assigned to other matters in the intervening years.

In any event, these circumstances produced evidence questions that were bound to be raised at the 1988 trial. Defendant wanted the jury to know that the State's key witness had been ruled incompetent to testify in 1976 and that the State had used the device of waiting for the boy to age in an attempt to overcome his allegedly inherent lack of credibility. The State,

on the other hand, considered the prior ruling respecting Sam's competence to testify to be irrelevant.

The trial judge ruled that he had to grant the State's motion for a mistrial because the jury had become unfairly prejudiced by the cumulative effect of four events that occurred during trial. One of those events occurred during jury selection, one after the jury had been sworn and before opening statements, one during defendant's attorney's opening statement and the last during a colloquy with counsel outside the presence of the jury.

The first event occurred on a Friday morning while the last three members of the jury were being selected from a new panel. Although we have been given a transcript of only that day's proceedings, we infer from statements in that transcript that earlier during the jury selection defendant had expressed concern that prospective jurors would erroneously speculate that defendant had delayed the trial for over a decade by being a fugitive. On the other hand, the State had expressed concern that prospective jurors would erroneously speculate that the State had unfairly kept defendant in jail all that time.

To allay both concerns, the judge told the prospective jurors Friday morning:

So, I'll tell you that, and during the trial, during the testimony it will develop—probably it will develop, and you will be satisfied as to the explanation of the delay. So, I want to let you know, though, that the defendant hasn't been out of the state. He hasn't been a fugitive. He hasn't fled. He's been available at all times. Also, and he's been available not because he has been in jail. He has not been in jail. He's not been incarcerated. He's not been confined, okay? All right.

The assistant prosecutor, anticipating defendant's attorney's efforts to blame the State for the delay, objected at sidebar to the judge's comment that the prospective jurors would "be satisfied as to the explanation of the delay." He complained that the remark unfairly burdened the State with an obligation to account to the jury for the delay.

The judge satisfied the objection by immediately addressing the jury as follows:

I will repeat that the event is supposed to have occurred—the murder was supposed to have occurred December 30, 1975, and that is 13, almost 13 years ago, and let me ask, would the delay or the time that it is alleged that this happened, December, 1975 to today, the time of trial, would that 13-year delay—and I don't use delay to indicate that someone was responsible and has to prove or disprove what they have done or have not done to bring the case to trial, but would that period of time, the lapse from the time it is supposed to have happened to the present time, would that influence anyone here? Would that cause you to be unable to fairly judge the defendant and the State in this matter, the fact that it's been 13 years? All right I see no hands raised.

I want to make certain that in that delay the Prosecutor need not justify that delay. The defendant need not justify that delay either. If it develops during the trial, fine. By fine I mean it will be evidential if it comes out at trial, but you are not at this moment to consider that period of time, that 13-year period of time. You are not to consider that. Only in respects that I asked you, would it influence you in this case? And I didn't see any hands raised.

I think that covers it, counsel?

[ASSISTANT PROSECUTOR]: Thank you, Your honor.

[DEFENDANT'S ATTORNEY]: Yes.

The second event occurred after the jury had been sworn and before opening statements. The judge was giving the jury some preliminary instructions when he said the following:

Bear in mind this, you are the judges of the facts, and you are the ones who will determine what weight, what believability, what credibility you will give to the testimony and the evidence, whether it is in the form of testimony from the witness stand or evidence of exhibits. So, you will be the judges of the facts, and the jury is to be concerned about the facts of the case, and at the end of the case when you are deliberating, it would be—well, you can ask the question, but I would have to return the answer to you, that you must use your own recollection. If you ask me a question, which you are permitted to do in writing, if you ask me a question while you are deliberating, could you tell us what witness X said, or did witness X say this? And my answer must be to you, you are the judges of the facts. You must recall what the evidence was and what the testimony was, and I am the judge of the law. You are the judge of the facts.

After the jury had been excused for its midmorning recess, the assistant prosecutor made the following comment in the form of a caution rather than an objection:

Prior to the recess, Your Honor gave some general instructions to the jury, and included in those instructions were instructions to the effect that the jury was—the jury was to, as the judge of the facts, and the jury—if jury members had questions with certain testimony, and were to ask the Court about what that witness said, the Court would tell them to rely on their recollection. That

is one course that is open to the Court. There are cases that do permit testimony read backs.

I'm putting this on the record, because I would ask the Court to be guided by it in the future dealings with the jury, because I don't—since we are engaged in a search for the truth, I don't want to discourage the jury from asking about testimony. It could work to clarify their understanding, and to the benefit of either side, the prosecution or the defense, and because we are engaged in a search for the truth, I don't want to discourage them from that.

The judge responded:

All right, at my regular instructions to the jury, I will mention to them that if the Court, after discussion with counsel, considers any situation necessary for testimony to be read back, the Court will do it, but it is not an automatic matter. It is a matter which the Court has discretion to permit or deny. I will mention it to them, certainly.

To which the assistant prosecutor responded, "Thank you."

The third event that the judge found contributed to the need for a mistrial was the following portion of defendant's attorney's opening statement made after he had urged the jury to remember that Sam was only 5 years old when the killing occurred, not the more mature 18–year–old who would be testifying:

You have to imagine, you have to harken back that that was a five-year-old, and why? Because after this occurred, and after Leroy was charged as a juvenile the first time around, there was a hearing. There was a juvenile court hearing, and I represented him back then.

The assistant prosecutor interrupted with a request for a sidebar conference, which the judge granted. These were the last words of the trial that the jury heard before the judge discharged them later that afternoon.

At the sidebar conference, which was conducted just before lunch, the assistant prosecutor objected to allowing defendant's attorney to undertake "a review of all the prior proceedings," which he considered irrelevant. He called upon defendant's attorney to make an offer of proof. The offer produced the fourth event. The judge simply noted the third event when he declared the mistrial without stating why defendant's attorney's remarks to the jury contributed to the need for a mistrial.

The fourth event appears to be at the heart of the matter. Responding to the assistant prosecutor's request for an offer of

proof, defendant's attorney stated that he was about to tell the jury that in 1976 a Juvenile and Domestic Relations Court judge had ruled that Sam was incompetent to testify. The assistant prosecutor objected, arguing that the prior ruling was irrelevant.

In the course of the argument that followed, defendant's attorney made the following point:

> Judge, you are going to have to instruct this jury that [the Juvenile and Domestic Court judge] entered an order finding that boy incompetent to testify 16 years ago; that that was a finding of fact and a finding of law in this case.

The assistant prosecutor described the argument of defendant's attorney as "ridiculous" and represented that he intended to call Sam as a witness to recount both his in-court and out-of-court identification of defendant as the person who killed his mother:

> ... Your Honor, the point is, the in-court identification falls into the same category as the out-of-court identification at the scene, because we are saying there was a young boy on December at the scene. That's the guy that shot my mother, and in January said in Court that's the guy that shot my mother.

The assistant prosecutor again insisted that the prior ruling was irrelevant and therefore requested the judge to order defendant's attorney not mention it.

The judge's entire ruling is as follows:

> All right, I think it's relevant because of the delay in this case. I think it is a factual situation. I will permit it.

The assistant prosecutor immediately moved for a mistrial. After brief remarks from both sides, including an argument in opposition to the motion from defendant's attorney, the judge denied the motion.

The assistant prosecutor then requested an opportunity to consider "whether to appeal this or not...." The judge, indicating a willingness to stay the trial while the assistant prosecutor moved for leave to appeal, thereupon excused the jury for lunch so that the assistant prosecutor could consider his next move.

The trial resumed at 2:00 p.m. out of the presence of the jury. Instead of requesting a stay, the assistant prosecutor renewed

his motion for a mistrial on the ground that the State was unfairly prejudiced by the cumulative effect of the four previously described events. When asked by the judge if he had "any response," defendant's attorney replied, "Nothing your honor, no."

The judge thereupon reversed himself and granted the State's motion for mistrial after delivering the following oral opinion:

> All right, there were several bases for the request for mistrial, and it may be, it may be that—I think there were five grounds alleged for a mistrial, centering mainly about the juvenile hearing and the testimony or non-testimony of the juvenile, the delay in the proceeding, the findings by the juvenile court, the instruction concerning the jury questions certainly can be corrected, and it may be that individually there may not be a basis for granting the motion, but combined, I think that the jury might have preconceived ideas or notions. I will grant the motion, but I'm going to ask that this matter resume tomorrow for the selection of the new jury. I'll grant the motion. Saturday, I'm sorry, yes.

Defendant's attorney immediately moved to dismiss the indictment "on the basis of double jeopardy." In the course of his argument, the attorney correctly pointed out that "[j]eopardy attached by virtue of the swearing of the jury...." The assistant prosecutor's only argument against the motion to dismiss the indictment follows:

> Your Honor, I would oppose that motion. I would urge that among other things, the defense team's own action has been responsible for part of the problem here, and for that reason I would submit that it shouldn't be granted.

The judge denied the motion reasoning as follows:

> All right, I apparently by my ruling reversed myself, reversed my ruling. I have done some research over the noon hour, and that was the basis for the granting of the motion for the mistrial.
>
> The motion to dismiss on the grounds of double jeopardy, opposed by the prosecutor, I will deny at this time. Of course, counsel may take an appeal from that certainly, but the reason and the basis for that is, though the jury has been sworn, there has been no testimony adduced, placing either the State or the defendant in a position of—the defense in the position of offering testimony in this matter.
>
> The jury has been sworn, but that in and of itself is not the total and sole criteria, but I will postpone the scheduling this case from tomorrow to a date—if you wish to appeal the denial of your motion for dismissal of the indictment, Mr. [naming defendant's attorney].

In the course of additional colloquy the judge said that he still thought that defendant's attorney "could inquire as to" the 1976 incompetency ruling. That remark prompted the assistant prosecutor to seek a clear-cut ruling on the point or "[w]e will find ourselves in the opening statement [at the new trial] with the same problem all over again." The judge promised to reconsider the matter over the weekend and announce his decision the following Monday.[2] After this colloquy, the judge called the jury into the courtroom at 2:30 p.m. and discharged them.

In *State in Interest of D.P.*, 232 *N.J.Super.* 8 (App.Div.1989), we recently reviewed the standards, codified in *N.J.S.A.* 2C:1–9d, for declaring a mistrial in a criminal case without thereby barring retrial because of the defendant's constitutional right to be placed in jeopardy only once for the same offense. *U.S. Const.*, Amend. V and XIV; *N.J. Const.*, Art. I, ¶ 11; *State v. Rechtschaffer*, 70 *N.J.* 395, 404 (1976); *State v. Farmer*, 48 *N.J.* 145, 168 (1966), *cert.* den. 386 *U.S.* 991, 87 *S.Ct.* 1305, 18 *L.Ed.*2d 335 (1967); *State v. Bowen*, 224 *N.J.Super.* 263, 273 n. 2 (App.Div.1988). The statute provides in relevant part:

> A prosecution of a defendant for a violation of the same provision of the statutes based upon the same facts as a former prosecution is barred by such former prosecution under the following circumstances:

>     \*      \*      \*      \*      \*      \*      \*      \*

> d. The former prosecution was improperly terminated. Except as provided in this subsection, there is an improper termination of a prosecution if the termination is for reasons not amounting to an acquittal, and it takes place after the jury was impaneled and sworn or, in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts. Termination under any of the following circumstances is not improper:

>     \*      \*      \*      \*      \*      \*      \*      \*

---

[2]The judge stayed further proceedings the following Monday to enable defendant to take the present appeal. Before doing so, however, he reversed himself on the evidence question, ruling that defendant's attorney could not comment in his opening statement upon the 1976 competency ruling.

(1) The defendant consents to the termination or waives, by motion to dismiss or otherwise, his right to object to the termination.

*    *    *    *    *    *    *    *

(8) The trial court finds that the termination is required by a sufficient legal reason and a manifest or absolute or overriding necessity.

It must be emphasized that as soon as the jury has been sworn in a criminal trial the trial judge and the prosecution must be alert that a mistrial could bar retrial under double jeopardy principles. Here, jeopardy having attached, we must consider whether a retrial is nevertheless permitted either because defendant consented or waived his right to object to the mistrial, or because the mistrial was "required by sufficient legal reason and a manifest or absolute or overriding necessity."

■ The State's primary argument is that by not having voiced an objection when the assistant prosecutor moved for a mistrial after lunch, defendant's attorney waived his right to object to the termination of the trial. *N.J.S.A.* 2C:1-9d(1). We disagree. The State moved twice for a mistrial, once before lunch and again after lunch. Defendant's attorney successfully argued against the motion before lunch and had no reason to believe that additional argument was necessary when the assistant prosecutor repeated the motion after lunch. Without being given any warning that the judge had second thoughts about his earlier ruling, defendant's attorney could not have anticipated that the judge would reverse himself. There is nothing in this record to suggest that defendant's attorney had withdrawn his opposition to a mistrial. His waiver of the opportunity to express his opposition again certainly was not a waiver of the opposition he had previously expressed.

■ The jury was aware of only the first three events that the judge referred to when he granted the State's motion for a mistrial. The judge nevertheless included the fourth event as one of the events that contributed to the irreparable prejudice of the jury. After alluding to all four events, he concluded,

"... [I]t may be that individually there may not be a basis for granting the motion, but combined I think that the jury might have preconceived ideas or notions." At that point the jurors could not have formed "preconceived ideas or notions" from the fourth event because it occurred outside their presence.

The first event was the judge's aside to the jury that "you will be satisfied as to the explanation for the delay" in bringing the matter to trial. The State contends that the remark unfairly inclined the jury to acquit unless the State fully explained the reasons for the delay. However, after the assistant prosecutor had objected at sidebar, the judge not only immediately instructed the jurors that he did not mean that "someone was responsible and has to prove or disprove what they have done or have not done to bring the case to trial," but also obtained an assurance from the jurors that, unless "it will be evidential if it comes out at trial," the delay would not "influence" them in deciding the issues of the case. The assistant prosecutor expressly thanked the judge when asked if the supplemental instruction "covers it."

The second event was the judge's preliminary instruction to the jury that may have led them to believe that testimony could not be read back to them during their deliberations on a verdict. The State contends in its brief simply that the judge's remark "compromised the integrity of the trial as a search for the truth." When the assistant prosecutor called the matter to the judge's attention out of the presence of the jury, the judge assured him that he would correct any mistaken impression that the jury may have had on the point when he delivered his final charge. The assistant prosecutor, who had not asked for any relief, thanked the judge. We fail to see how this event "compromised the integrity of the trial."

The third event was the reference in defendant's attorney's opening statement to the fact that there had been prior proceedings in the case when defendant was a juvenile. The State simply contends in its brief that "it is improper for the defense

attorney to refer to prior proceedings in an attempt to evoke sympathy of the jury for the defendant, on the theory that the defendant is being persecuted." The assistant prosecutor acknowledged at trial that the State's key evidence is Sam's testimony. It is unrealistic to believe that defendant's attorney would not attack Sam's credibility with the contradictory and nonsensical testimony he gave in the Juvenile and Domestic Relations Court 13 years earlier when he was 5 years old. Even if defendant's attorney had not mentioned the prior proceedings in his opening statement, the jury inevitably would learn of them in the course of the trial.

None of these three events could possibly have contributed to a need to terminate a criminal trial over the defendant's objection—a need that has long been measured by the need to protect "the ends of public justice." *United States v. Perez,* 22 *U.S.* (9 Wheat.) 579, 6 *L.Ed.* 165 (1824).

■ The fourth event was essentially an evidence ruling by the trial judge with which the State disagreed. The immediate issue before the judge was whether defendant's attorney may tell the jury in his opening statement that 13 years earlier a Juvenile and Domestic Relations Court judge had found that Sam was then incompetent to testify. The answer to that question depended upon the admissibility of that 1976 judicial determination.[3]

---

[3]The attorneys did not present their arguments on this evidence question within the framework of the Rules of Evidence. Had they done so, the State's argument would probably have been that the prior determination was merely that judge's inadmissible hearsay opinion that Sam could not testify because, given the mental limitations of his age, he was "incapable of understanding the duty of a witness to tell the truth." *Evid.R.* 17(b). That determination is irrelevant because now, thirteen years later, Sam no longer has those limitations. Defendant's argument would probably have been that the prior judicial determination was a finding of fact, binding in all later proceedings of the same prosecution, that Sam could not testify that defendant was his mother's killer because, given the mental limitations of his age, his ability to perceive what he may have seen was faulty so he did not have "personal knowledge of

██ Where the State moves for a mistrial in a criminal case because it believes an evidence ruling is in error, the judge should either deny the motion or change the evidence ruling if, upon further reflection, he agrees that it was erroneous. Here the trial judge did not change his ruling.[4] The assistant prosecutor, if he disagreed, should have accepted the judge's offer to stay the trial so that he could made an emergent application to this court for leave to appeal. *R.* 2:3–1(b)(5); *R.* 2:9–8. Instead, the State unaccountably chose to move for a mistrial. Such easy and inappropriate recourse to a motion for a mistrial suggests that the State wanted to start over because its case had "turned sour" or, for some undisclosed inexcusable reason it was not able to proceed. Retrying a criminal defendant in those circumstances strikes directly at the core of his constitutional right to be free of a second prosecution for the same offense. *See State v. Stani,* 197 *N.J.Super.* 146, 151 (App.Div.1984).

The order denying defendant's motion to dismiss the indictment is reversed.

---

the matter," a prerequisite to the admissibility of a witness's testimony. *Evid.R.* 19. We need not extend the arguments or decide the issue.

[4]Although after he granted the motion for a mistrial on Friday the judge immediately restated his belief that his evidence ruling had been correct, he obviously was uncertain because he added that he would be willing to reconsider the ruling the following Monday. In any event he could not simultaneously have believed that the ruling was correct and that there was a "manifest necessity" to grant a mistrial because the ruling was wrong. In view of his doubts, the judge should have continued the trial from mid-afternoon Friday until the following Monday morning to give the matter further consideration.