576 A.2d 342

STATE OF NEW JERSEY, IN THE INTEREST OF J.O., JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued June 12, 1990—Decided July 11, 1990.

*Delia V. Edoga* argued the cause for appellant.

*Daniel T. Dalena,* Assistant Morris County Prosecutor, argued the cause for respondent (*Lee S. Trumbell,* Morris County Prosecutor, attorney; *Joseph Connor, Jr.,* Assistant Prosecutor, of counsel and on the brief).

Before MICHELS, DEIGHAN and R.S. COHEN, JJ.

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Pursuant to leave granted by this court, J.O., a juvenile, appeals from an order of the Chancery Division, Family Part that denied his motion for reconsideration of a prior order granting the State's motion for a retrial on charges of resisting arrest and denying his motion to preclude any further trial on the charge pursuant to *N.J.S.A.* 2C:1–9a and the state and federal constitutions. The pivotal issue posed by this appeal is whether further prosecution of J.O. is barred by principles of double jeopardy.

A brief review of the procedural background giving rise to this appeal is essential to the resolution of this issue. J.O. was

charged with juvenile delinquency under *N.J.S.A.* 2A:4A–23 in that he committed acts of (1) terroristic threats in violation of *N.J.S.A.* 2C:12–3(b); (2) disorderly conduct in violation of *N.J.S.A.* 2C:33–2(a); (3) resisting arrest in violation of *N.J.S.A.* 2C:29–2(a), and (4) underage consumption of alcoholic beverages in violation of *N.J.S.A.* 2C:33–15. Following plea negotiations, J.O. agreed to plead guilty to the charges and the prosecutor agreed to recommend probation so that J.O. could enter the armed forces. Thereafter, J.O. appeared before the trial court without an attorney and pleaded guilty to all charges. The trial court accepted J.O.'s guilty pleas to resisting arrest and underage consumption of alcoholic beverages, but refused to accept J.O.'s guilty plea to the charge of terroristic threats. The matter was scheduled for a contested hearing.

Thereafter, at the conclusion of the evidence on the charge of terroristic threats, J.O., now represented by an attorney, moved to withdraw his guilty plea to the charge of resisting arrest. J.O. argued that his guilty plea lacked a sufficient factual basis and, therefore, should not have been accepted by the trial court. J.O., claiming that the resisting arrest and terroristic threats charges arose out of the same incident, also requested that the resisting arrest charge be adjudicated solely on the testimony presented during the trial of the terroristic threats charge.

After reviewing the transcript of the plea proceedings, the trial court held that J.O.'s guilty plea on the resisting arrest charge lacked a sufficient factual basis, and thus, vacated the plea. The State then sought permission to present testimony on the resisting arrest charge. Essentially, the State argued that it was not afforded an opportunity to present proofs on that charge and that it had relied on the guilty plea. The trial court denied the State's request and found J.O. not guilty of terroristic threats and resisting arrest. With respect to the resisting arrest charge, the trial court specifically held:

> With respect to [J.O.]., I find the same, that he did not resist arrest and I don't think any evidence that can be produced, even though there's been plenty of evidence about whether he resisted or he didn't resist, I don't know what all

that shaking meant in the police car, but without knowing that and without knowing why he jumped up out of the car in that shaking type of mode, I can't tell beyond a reasonable doubt, I can't say beyond a reasonable doubt that he was resisting arrest. Actually he was under arrest at that time. He was handcuffed and in the car, so he was already arrested and I don't find that he resisted the arrest. He may have been mouthy and he may have been drunk, although it would be awfully hard to say that based on this evidence, but I don't find that he resisted any arrest and I don't see how any evidence that anybody else could present could change that. I must say that the decision that I've made is made in the context of what I consider to be a, a very troublesome series of events. I'm going to ask the prosecutor to turn over to me the results of any investigation that arose out of this affair. And the thing that strikes me as odd is that we are called, the police are called to the scene of what is, in effect, nothing. There's at most the only thing, except for the fact that the defendants here were so willing to plead to things at an earlier date, I, I would never be able to say that they were fighting. From what I've heard, it was an argument. The police get to this, to this place and the mother is there ready to take them home and three officers with two juveniles and we end up in a melee brawl in the police station over a wallet. To me, something went wrong and I'd like to know what it is, but it just seems to me that the, the events of that night raise so many questions that the court simply could not find these juveniles guilty of the serious charges which have been filed against them. So I'm going to call, ask the prosecutor to provide me with a copy of any investigation, internal or by the prosecutor's office, and I just want to say for the record that I will not tolerate any kind of police involvement that violates the civil rights of a juvenile who appears before me in this court. I'm not making any finding that it occurred, but I'm concerned about it and I want to know more about it. Okay, that's the decision.

The trial court then placed J.O. on probation for one year and ordered him to perform 30 hours of community service for his being adjudicated a delinquent based on his guilty plea to the disorderly conduct and underage consumption of alcoholic beverages charges as well as an unrelated theft charge. In addition, the trial court imposed a Violent Crimes Compensation Board penalty of $30.

Thereafter, the State moved for reconsideration of the trial court's adjudication of not guilty based on its refusal to grant the State an opportunity to present proofs on the resisting arrest charge. The trial court, acknowledging that it had erred in acquitting J.O. on the resisting arrest charge without affording the State further opportunity to present its proofs, granted the motion. J.O. then moved for reconsideration of that deci-

sion.  The trial court denied J.O.'s motion and we granted leave to appeal.

J.O. contends that the trial court erred in ordering a new trial on the resisting arrest charge since a verdict of not guilty was rendered on the merits.  He argues that such a ruling violated his constitutional rights against double jeopardy.  We agree and reverse.

The double jeopardy clause of the fifth amendment of the United States Constitution provides: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  This federal constitutional guarantee was made applicable to the states through the due process clause of the fourteenth amendment.  *Illinois v. Vitale*, 447 *U.S.* 410, 415, 100 *S.Ct.* 2260, 2264, 65 *L.Ed.*2d 228, 235 (1980); *Benton v. Maryland*, 395 *U.S.* 784, 794, 89 *S.Ct.* 2056, 2062, 23 *L.Ed.*2d 707, 716 (1969).  Our State Constitution contains a parallel provision which provides: "No person shall, after acquittal, be tried for the same offense."  Art. I, par. 11.  Our Supreme Court has "consistently interpreted the state constitutional double jeopardy protection as co-extensive with the guarantee of the federal Constitution."  *State v. De Luca*, 108 *N.J.* 98, 102, 527 *A.*2d 1355, *cert.* den. 484 *U.S.* 944, 108 *S.Ct.* 331, 98 *L.Ed.*2d 358 (1987).  *See State v. Dively*, 92 *N.J.* 573, 578, 458 *A.*2d 502 (1983); *State v. Barnes*, 84 *N.J.* 362, 370, 420 *A.*2d 303 (1980).

The double jeopardy clause provides three fundamental protections.  It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction and it protects against multiple punishments for the same offense.  *North Carolina v. Pearce*, 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L.Ed.*2d 656, 664–65 (1969); *State v. DeLuca, supra*, 108 *N.J.* at 102, 527 *A.*2d 1355.  The rationale underlying these protections is

that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. [*Green v. United States*, 355 *U.S.* 184, 187–88, 78 *S.Ct.* 221, 223–224, 2 *L.Ed.*2d 199, 204 (1957)].

In applying double jeopardy principles, " 'the primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals.' " *State v. Cormier*, 46 *N.J.* 494, 504, 218 *A.*2d 138 (1966) (quoting *State v. Currie*, 41 *N.J.* 531, 539, 197 *A.*2d 678 (1964)). "As basic as the protection for defendants is the '[p]ublic interest in seeing that there is a fair trial designed to end in a just and equitable judgment.' " *State v. Laganella*, 144 *N.J.Super.* 268, 290, 365 *A.*2d 224 (App.Div.1976) (quoting *State v. Rechtschaffer*, 70 *N.J.* 395, 360 *A.*2d 362).

"Naturally, no question of double jeopardy arises unless jeopardy has first attached sometime prior to what the defendant seeks to characterize as the 'second prosecution.' " *Fransaw v. Lynaugh*, 810 *F.*2d 518, 523 (5th Cir.), *cert.* den. 483 *U.S.* 1008, 107 *S.Ct.* 3237, 97 *L.Ed.*2d 742 (1987) (citing *Serfass v. United States*, 420 *U.S.* 377, 388, 95 *S.Ct.* 1055, 1062–1063, 43 *L.Ed.*2d 265, 274 (1975)). In jury trials jeopardy attaches "when the jury is empaneled and sworn." *Crist v. Bretz*, 437 *U.S.* 28, 35, 98 *S.Ct.* 2156, 2161, 57 *L.Ed.*2d 24, 31 (1978). In a bench trial, "jeopardy attaches when the court begins to hear evidence." *Serfass v. United States, supra*, 420 *U.S.* at 388, 95 *S.Ct.* at 1062, 43 *L.Ed.*2d at 274.

Jeopardy attached here when the trial court determined to adjudicate J.O.'s guilt on the testimony presented at the contested hearing in connection with the terroristic threats charge and found J.O. not guilty of resisting arrest. While the trial court clearly erred by considering and deciding J.O.'s guilt on the charge of resisting arrest without affording the State an opportunity to call additional witnesses and present additional proofs, J.O. cannot be retried on this charge. J.O. is protected

against further prosecution after his acquittal by the fifth amendment to the United States Constitution and Article I, par. 11 of the New Jersey Constitution. To permit a retrial on the same charge would violate these fundamental principles of double jeopardy. *Cf. State v. Lynch,* 79 *N.J.* 327, 340, 399 *A.*2d 629 (1979); *State v. Stani,* 197 *N.J.Super.* 146, 151–152, 484 *A.*2d 341 (App.Div.1984). *See also State v. Howard,* 235 *N.J. Super.* 243, 257, 561 *A.*2d 1202 (App.Div.), certif. den. 118 *N.J.* 206, 570 *A.*2d 966 (1989), *cert.* den. —— *U.S.* ——, 110 *S.Ct.* 1168, 107 *L.Ed.*2d 1070 (1990).

Accordingly, the order under review is reversed and the further prosecution of J.O. on the complaint charging him with resisting arrest is barred.