**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0216-15T2

STATE IN THE INTEREST OF
D.M., a juvenile.

_____

APPROVED FOR PUBLICATION

August 9, 2017

APPELLATE DIVISION

Submitted May 16, 2017 — Decided August 9, 2017

Before Judges Reisner, Koblitz and Sumners.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FJ-20-209-15.

Joseph E. Krakora, Public Defender, attorney for appellant D.M. (Seon Jeong Lee, Designated Counsel, on the briefs).

Grace H. Park, Acting Union County Prosecutor, attorney for respondent State of New Jersey (Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

The opinion of the court was delivered by

KOBLITZ, J.A.D.

D.M.,[1] appeals from a May 29, 2015 adjudication of delinquency for acts which, if committed by an adult, would constitute third-degree endangering the welfare of a child,

_____

[1] We use initials and pseudonyms to protect the identity of the juvenile and minors involved in these proceedings. R. 1:38-3(d).

N.J.S.A. 2C:24-4(a).  The dispositional order imposed a three-year probationary term, N.J.S.A. 2A:4A-43(b)(3), treatment at an outpatient residential placement program, and full compliance with sex offender requirements pursuant to Megan's Law, N.J.S.A. 2C:7-1 to -11.[2]  The trial judge found that the State did not prove the sexual behavior between fourteen-year-old D.M. and his eleven-year-old alleged victim, "Zane," involved sexual penetration.  Coercion was not alleged or found.  Based on those findings, using the appropriate principles of statutory construction, an adjudication of delinquency against a child for endangering the welfare of another child less than four years younger based on sexual contact is not sustainable and we therefore reverse.

---

[2] Because D.M. was over the age of fourteen when the incident occurred, he must report for at least fifteen years.  N.J.S.A. 2C:7-2(f); In re Registrant J.G., 169 N.J. 304, 337 (2001) (holding that in the case of a ten-year old adjudicated delinquent for aggravated sexual assault of his eight-year-old cousin, Megan's Law applies until age eighteen if the juvenile offender is under the age of fourteen and is determined by clear and convincing evidence to be unlikely to pose a threat to the safety of others); State ex rel. J.P.F., 368 N.J. Super. 24, 38-39 (App. Div.), certif. denied, 180 N.J. 453 (2004) (declining to extend the holding in J.G. regarding termination of Megan's Law requirements to a seventeen-year-old juvenile offender adjudicated delinquent for fourth-degree criminal sexual contact of another seventeen year old, as juvenile was over fourteen years of age).  Cf. State ex rel. C.K., 228 N.J. 238 (2016) (granting certification on the issue of whether lifetime registration requirements imposed on juveniles is constitutional).

D.M. was charged with delinquency for conduct occurring between April 1 and August 20, 2014, which, if engaged in by an adult, would constitute first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1).

After conducting an N.J.R.E. 104(a) hearing, the trial judge admitted into evidence Zane's out-of-court disclosures pursuant to N.J.R.E. 803(c)(27) (permitting hearsay testimony by a child under the age of twelve "relating to sexual misconduct committed with or against that child" if the court finds "there is a probability that the statement is trustworthy"). The following facts were developed at the hearing[3] and subsequent trial.

Eleven-year-old Zane and his younger brother, Za.Y., who was nine years old, spent time when not in school in the area where their mother, L.Y., operated her hair salon. Zane and Za.Y. played across the street from the salon in the playground behind a school with their friend, R.R., who was fifteen years old at the time and lived a few doors away from the salon. R.R. and D.M. had been friends for several years. R.R. introduced D.M. to Zane at the playground. D.M. is approximately three and one-half years older than Zane. During April 2014, D.M. was fourteen years old.

---

[3] By consent, testimony from the hearing was incorporated into the bench trial. See State v. Gibson, 219 N.J. 227, 249 (2014) (allowing that procedure in a drunk-driving prosecution).

L.Y., her adult daughter, N.C., N.C.'s boyfriend, Zane, Za.Y, and E.B., L.Y.'s boyfriend's seven-year-old son were at L.Y.'s house one evening in August 2015. Zane and Za.Y. were in their shared upstairs bedroom with E.B. L.Y. went to "check on the boys." Upon entering the room, she observed Za.Y. sleeping on the top section of the bunkbed, and Zane and E.B. sitting together on the bottom bed in an odd arrangement. Although she initially left, L.Y. shortly returned and observed that Zane's shorts were "twisted." L.Y. angrily asked Zane "what [were] you doing?" Zane initially denied any wrongdoing. L.Y. then asked E.B. what was going on. E.B. told L.Y. that "[Zane] was doing nasty things" including "rubbing his penis on him." L.Y. yelled at Zane, "popped" Zane on the buttocks, and asked him repeatedly where he learned this behavior. Zane answered, "the boy did it to me."

According to N.C., she came upstairs and her mother, L.Y., sounded "furious." N.C. found her mother in her bedroom crying and yelling at her brother, Zane. N.C. took Zane to the downstairs bathroom, hugged Zane as he was crying, and told him he "shouldn't be in bed with another little boy." N.C. asked him three times, "where did he get that from?" Zane responded, "someone did that to him." Zane then told N.C. that D.M. "made him suck his penis . . . and [D.M.] told [Zane] to put his penis

in his anus."  Zane said he had not told his family because "he was scared of what everyone would think."  L.Y. testified, and N.C. confirmed, that Zane stated he was afraid "daddy's going to kill me" and his brothers and father "would think he was gay."

Sergeant Walter Johnson of the Union County Prosecutor's Office, Special Victims Unit, testified that he conducted a one-on-one video-recorded interview with Zane sometime mid-morning on the day following this incident.

On the video recording,[4] Johnson asked Zane "do you know why you're here today?"  Zane responded, "Yeah" and, "[c]ause I did something."  Zane was initially unresponsive, until Johnson assured Zane that he was "not in any trouble[,]" after which he asked Zane "what happened?"

Zane revealed two interactions two weeks apart with D.M. while they were at the playground.  Zane said that, at D.M.'s request, Zane "sucked [D.M.'s] thingy."  Zane further stated to Johnson that the sexual activity with D.M. occurred at the playground in a stairwell after it "got dark" and their friends and Za.Y. left.  According to Zane, both he and D.M. were standing while Zane performed fellatio on D.M. for only "two seconds."  Zane also claimed he did not know any other name for the part he referred to as "thingy," and that D.M. did not touch

---

[4] We were provided with the transcript but not the recording.

any other part of Zane's body.  Zane said, "[i]t made [him] feel weird."

Although Zane originally denied that D.M. had touched him during this second incident, he later stated that D.M. "touched [him] on [his] butt" with D.M.'s "thingy."  Zane stated that D.M. told him to take off his clothes and he tried to put it in, but Zane told him to stop because "[i]t kind of hurt."  At trial, Zane testified that it was during the first incident that D.M. attempted to anally penetrate him.

Johnson asked Zane if "something like [the D.M. incident] happened with anyone else[,]" and Zane confirmed that it happened with E.B., his mother's boyfriend's seven-year-old son, after Zane asked E.B. "to suck his thingy[,]" and E.B. complied. Zane told Johnson that "[l]ast night" was the only time that Zane had ever done that with E.B., and that nothing else occurred between them.

Zane told Johnson that he told both L.Y. and his father, "everything [he] told [Johnson]."

Zane's father was in the courtroom as a "support person" during Zane's testimony.  In addition to his disclosures regarding the two incidents with D.M. in the playground stairwell, Zane testified at trial about another incident when he and D.M. walked to D.M.'s house.  The first time he told

anyone about this third incident was one week before trial "because [he] didn't remember it" before then. According to Zane, D.M. asked Zane if he could "[p]ut his thing in [Zane's] mouth again," for which Zane complied. Zane did not recall when this occurred. When questioned about the incidents in the park, and asked whether D.M. told him or "politely ask[ed]" him to stay, Zane responded: "He asked me." Zane denied D.M. forced him or threatened him, although he said the interaction made him feel uncomfortable and "weird" and he did not like it.

On cross-examination, Zane admitted that he used the video and messaging chat application, "Oovoo," to contact D.M. Zane confirmed that one night at 10:29 p.m. he messaged D.M. Although he refused to read the message aloud, he acknowledged he wrote to D.M., "So 69, let me C-U-R cock." D.M. did not respond, although Zane tried to call him again. Zane also testified on cross-examination that he knew what "cock" and "69" meant, and that his older friend R.R. had previously shown him "dirty" pictures on R.R.'s smartphone. Zane also said that when discovered with E.B., his mother "popped" him for the first time in his life.

Zane stated that the night he was discovered having E.B. perform fellatio on him was not the first time he engaged in that behavior with E.B. Zane admitted to three sexual

7                                                                    A-0216-15T2

encounters with the seven-year-old. Zane said he told the younger child he had learned the behavior from pornography.

D.M. presented B.V., aged seventeen, and B.C., aged eighteen, as defense witnesses. Both were in the Junior Reserve Officer Training Corps with D.M. B.V. testified he was "best friends" with D.M. and that they would "hang out" together at the playground behind the school. B.V. stated that he sometimes saw Zane, who frequently urinated in public and "cursed a lot." B.C. testified he also went to the playground with D.M., who he described as "committed, hardworking, outgoing, [and] outspoken." B.C. stated that Zane acted inappropriately at the playground by "piss[ing] on a tree." He stated Zane made statements to R.R., B.V., and B.C., like: "Can I suck your dick?"

D.M. denied any sexual contact with Zane. D.M. testified that Zane asked to "suck [D.M.'s] dick" or if D.M. "would suck [Zane's] dick." D.M. corroborated B.C.'s and B.V.'s testimony that Zane urinated on the playground in public. D.M. testified that he received the "Oovoo" message from Zane, and was annoyed with Zane "[b]ecause he kept calling." On cross-examination, D.M. admitted someone from his school called D.M.'s mother about D.M.'s "gay bashing" during a verbal altercation with another student, resulting in a "Saturday detention."

The parties agreed that the court could consider the lesser-related charge of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a), as provided in State v. Thomas, 187 N.J. 119, 134 (2006). In summation, D.M.'s counsel argued that he was not guilty of any offense, and the prosecutor argued that the juvenile had committed acts that would constitute aggravated sexual assault if committed by an adult and would also support a finding of third-degree endangering the welfare of a child.

The judge rendered a written opinion finding D.M. committed third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The judge found D.M.'s testimony was "inauthentic" as it "could more aptly be described as a job interview, where [D.M.] was trying to sell himself." The judge determined D.M.'s witnesses, B.V. and B.C., were "earnest" but both lacked specific relevant information. The judge found Zane was a credible witness who provided consistent and specific testimony on all three incidents with D.M. The judge, however, found insufficient proof of penetration.[5] The judge held the evidence

---

[5] According to N.J.S.A. 2C:14-1(c):

> 'Sexual penetration' means vaginal intercourse, cunnilingus, fellatio or anal intercourse between persons or insertion of the hand, finger or object into the anus or

adduced at trial proved that D.M. knowingly engaged in sexual conduct that would impair or debauch the morals of a child. Three months later, when imposing a disposition, the judge commented that he had found no penetration only for "humanitarian reasons," and in spite of the strength of the proofs.

D.M. raised the following issues on appeal:

> POINT I: THE COURT ERRED IN RULING THAT [ZANE'S] SELF-SERVING OUT-OF-COURT STATEMENTS MADE UNDER DURESS AND COERCION BY ADULT FAMILY MEMBERS WERE TRUSTWORTHY AND ADMISSIBLE UNDER N.J.R.E. 803(c)(27), DEPRIVING D.M. OF A FAIR TRIAL. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. 1, PAR. 10.

> POINT II: THE COURT'S FINDING OF DELINQUENCY WAS NOT SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE AND MUST BE REVERSED.

> POINT III: THE ADJUDICATION OF DELINQUENCY SHOULD BE REVERSED BECAUSE D.M.'S PREDISPOSITION REPORT WAS NOT PROVIDED AT THE DISPOSITION HEARING AND D.M. DID NOT EXPRESSLY WAIVE THIS MANDATORY REQUIREMENT. R. 5:24-2.

> POINT IV: THE COURT'S IMPOSITION OF THE MAXIMUM SENTENCE OF 3 YEARS' PROBATION WAS EXCESSIVE AND SHOULD BE REDUCED.

---

vagina either by the actor or upon the actor's instruction. The depth of penetration shall not be relevant as to the question of the commission of the crime.

A-0216-15T2

At our request, the parties also submitted supplemental briefs expanding the issue the juvenile raised in Point II to encompass the question of whether the lack of a finding of penetration or coercion undermines the delinquency finding of endangering the welfare of a child, in light of the four-year age difference required for a delinquency finding of sexual assault. Because we reverse the adjudication on this issue, we do not address the other points raised by D.M. on appeal.

When reviewing the result of a bench trial, we do not make factual findings. "We must give deference to those findings of the trial judge which are substantially influenced by his or her opportunity to hear and see the witnesses and have the 'feel' of the case, which we do not enjoy upon appellate review." State ex rel. S.B., 333 N.J. Super. 236, 241 (App. Div. 2000). We

> do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence. We are not in a good position to judge credibility and ordinarily should not make new credibility findings. However, our review of the sufficiency of the facts to satisfy an applicable legal standard is a question of law.
>
> [Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (internal quotation marks and citations omitted).]

The potential lesser-included crime of first-degree aggravated sexual assault of a child, fourth-degree criminal

11                                    A-0216-15T2

sexual contact through force or coercion, N.J.S.A. 2C:14-3(b), was expressly excluded from consideration by the judge. Coercion was not charged in the complaint and the judge found no evidence of coercion, force or an attempt to commit an aggravated sexual assault. The judge stated he made findings consistent with Zane's testimony, writing "at no time did [D.M.] use force or threaten him to perform the charged sex acts, and in fact, was rather polite in his requests." Coercion as used in N.J.S.A. 2C:14-3(b) is defined the same way as criminal coercion in N.J.S.A. 2C:13-5(a). N.J.S.A. 2C:14-1(j).

> A person is guilty of criminal coercion if, with purpose unlawfully to restrict another's freedom of action to engage or refrain from engaging in conduct, he threatens to:
>
> (1) Inflict bodily injury on anyone or commit any other offense, regardless of the immediacy of the threat;
>
> (2) Accuse anyone of an offense;
>
> (3) Expose any secret which would tend to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute;
>
> (4) Take or withhold action as an official, or cause an official to take or withhold action;
>
> (5) Bring about or continue a strike, boycott or other collective action, except that such a threat shall not be deemed coercive when the restriction compelled is demanded in the course of negotiation for

12

the benefit of the group in whose interest the actor acts;

(6) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or

(7) Perform any other act which would not in itself substantially benefit the actor but which is calculated to substantially harm another person with respect to his health, safety, business, calling, career, financial condition, reputation or personal relationships.

[N.J.S.A. 2C:13-5(a).]

Although the judge found D.M. was larger and older than Zane, the judge found a lack of coercion or threat.

In an adult criminal case where no penetration is found, the factfinder could consider the lesser-included second-degree crime of sexual assault of a child under the age of thirteen, N.J.S.A. 2C: 14-2(b).  The definition of sexual contact is:

an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor.

[N.J.S.A. 2C:14-1(d).]

Sexual assault of a child by sexual contact, however, requires a four-year age difference between the actor and the victim.   N.J.S.A. 2C:14-2(b) states: "An actor is guilty of sexual assault if he commits an act of sexual contact with a

13

victim who is less than 13 years old and the actor is at least four years older than the victim." Logically, the purpose of this section is to avoid criminalizing non-coercive sexual contact between two juveniles who are less than four years apart in age.[6] See Assembly Judiciary, Law and Public Safety, and Defense Committee Statement to Assembly Bill No. 3279, at 78-79 (June 28, 1979) (indicating that the Legislature did not intend to criminalize sexual experimentation between juveniles of similar ages).

As the judge stated in his opinion, because he did not find sexual penetration or coercion, and D.M. was less than four years older than Zane, the judge did not consider lesser-included sexual crimes. He considered only the lesser-related third-degree crime of endangering the welfare of a child. Both the State and juvenile had agreed to that possible disposition when the issue of penetration was alleged and unresolved.

Once the judge found insufficient evidence of sexual penetration, the question became whether a juvenile who is not guilty of sexual assault due to an insufficient age differential could nonetheless be adjudicated delinquent of child endangerment for that same behavior. In other words, did the

---

[6] No adult could be less than four years older than a child twelve years old or younger.

Legislature particularly exempt sexual contact between two children close in age from delinquent liability only to criminalize that same conduct under the more general rubric of child endangerment? The State argues that even without the four-year age difference, D.M.'s behavior constitutes "sexual conduct" and thus fits the definition of endangerment. As our Supreme Court has stated, however, when a clear ambiguity exists "a canon of statutory construction directs that a specific statute generally overrides a general statute." State v. Robinson, 217 N.J. 594, 609 (2014); see also State ex rel. J.P.F., supra, 368 N.J. Super. at 38 ("Under usual rules of statutory construction, the more specific law must be interpreted as prevailing over the more general one.").

The pertinent part of the child endangerment statute, N.J.S.A. 2C:24-4(a), states:

> (1) Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this paragraph to a child is guilty of a crime of the third degree.
>
> [(Emphasis added).]

"Although the term 'sexual conduct' is not defined [in the child endangerment statute], clearly included are sexual

assaults and sexual contact[.]" <u>State v. Perez</u>, 177 <u>N.J.</u> 540, 553 (2003) (quoting <u>State v. Perez</u>, 349 <u>N.J. Super.</u> 145, 153 (2002)) (second alteration in the original). To ascertain Legislative intent we "read words and phrases in their context and apply their 'generally accepted meaning.'" <u>N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst</u>, __ <u>N.J.</u> __, __ (2017) (slip op at 39-40) (quoting <u>N.J.S.A.</u> 1:1-1). "[W]e can also draw inferences based on the statute's overall structure and composition." <u>State v. S.B.</u>, __ <u>N.J.</u> __, ___ (2017) (slip op. at 6).

The Legislature did not intend sexual behavior between children close in age not involving penetration, which it specifically exempted from the criminal statutes, to nonetheless be included within the crime of child endangerment. Our Supreme Court has told us to analyze ambiguous statutes in a criminal context in favor of the accused:

> Like all matters that require interpretation of a statute, our goal of implementing the Legislature's intent begins with the text of the statute. If the meaning of the text is clear and unambiguous on its face, we enforce that meaning. If the language admits to more than one reasonable interpretation, we may look to sources outside the language to ascertain the Legislature's intent. When extrinsic sources cannot clarify the meaning of ambiguous language, we employ the canon of statutory construction that counsels courts to construe ambiguities in penal statutes in favor of defendant.

> [State v. Reiner, 180 N.J. 307, 311–12
> (2004) (citations omitted).]

Although D.M. engaged in behavior that would generally be considered sexual conduct with another child, the sexual contact was exempted from criminal liability by a specific statute.

The State argues we should determine that sexual penetration was proven in spite of the judge's findings to the contrary. The judge found an absence of sexual penetration in a written opinion issued two weeks after the trial ended, concluding that Zane's testimony was not sufficiently specific or persuasive on this issue. Three months later, when imposing a disposition, he described his failure to find penetration as a "humanitarian gesture." When a court does not find facts legally sufficient to adjudicate the accused delinquent, that is the end of the matter with respect to that charge. We cannot, as the State here urges, change the original adjudication based on comments the court made in the course of imposing a disposition. We are not fact-finders. See State ex re. J.P.F., supra, 368 N.J. Super. at 31. The judge articulated the insufficiency of the evidence as to penetration. Whether he was motivated to make this finding in part by mercy is not legally relevant. Double jeopardy prevents the State's appeal of a not-delinquent finding in a juvenile trial. State in Interest of

J.O., 242 N.J. Super. 248, 253-54 (App. Div.), certif. denied, 122 N.J. 385 (1990).

We need not reach the issue of whether the Legislature intended a juvenile to be found delinquent for endangering the welfare of another child under any circumstances. State in Interest of A.B., 328 N.J. Super. 96, 97 (Ch. Div. 2000) (determining that juveniles were subject to the child endangerment statute, in particular with respect to the prohibition against distribution of child pornography, N.J.S.A. 2C:24-4(b)); see also In re Civil Commitment of R.F., 217 N.J. 152, 157-58 (2014) (affirming the denial of civil commitment as a sexually violent predator of a juvenile who pled guilty in adult court to endangering the welfare of a child after being charged with first-degree aggravated sexual assault of two children aged twelve and thirteen); State ex rel. D.A., 385 N.J. Super. 411, 414 (App. Div.), certif. denied, 188 N.J. 355 (2006) (involving a juvenile who entered a guilty plea to endangering the welfare of his six-year-old half-sister).

Neither penetration nor coercion was found by the trial judge. The Legislature expressly stated its intent not to criminalize sexual contact between children less than four years apart in age absent either penetration or coercion. We must honor that Legislative expression. To the extent that the child

endangerment statute might nonetheless be thought to include behavior of the nature found by the judge in this case, ambiguity in the construction of the statute must be resolved in favor of the juvenile both because the specific statute trumps the general statute and because ambiguous criminal statutes must be interpreted favorably to the accused.  See Robinson, supra, 217 N.J. at 609; Reiner, supra, 180 N.J. at 311-12.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0216-15T2