**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0362-18T1

CNJ CONSTRUCTION
CORPORATION,

    Plaintiff-Respondent,

v.

AUTOBUILDERS GENERAL
CONTRACTING SERVICES, INC.,

    Defendant-Appellant,

and

ARCH INSURANCE COMPANY,

    Defendant.

_____

Submitted October 31, 2019 – Decided January 31, 2020

Before Judges Nugent and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1327-16.

Scott Mark Yaffe, attorney for appellant.

Hoagland Longo Moran Dunst & Doukas, attorneys for respondent (Lawrence P. Powers, of counsel; Peter K. Oliver, on the brief).

PER CURIAM

Defendant Autobuilders General Contracting Services, Inc. (Autobuilders) appeals from the August 14, 2018 final judgment of the Law Division awarding damages to plaintiff CNJ Construction Corporation (CNJ) and dismissing Autobuilders's counterclaim in this construction contract dispute. We affirm.

I.

The trial court found the following facts after trial. Autobuilders was the general contractor responsible for the construction of a Maserati dealership in Morris County (the Project). In 2014 and 2015, Autobuilders entered into four subcontracts with CNJ relating to the Project. Under the subcontracts, CNJ was responsible for demolition, concrete, steel, and site work. The provisions of the four subcontracts at issue here are identical.

According to Article 9.1 of the subcontracts,

> [i]f in the opinion of Autobuilders, [CNJ] shall at any time: (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality; (2) fail in any respect to prosecute the work according to the current schedule; (3) cause, by any action or omission, the stoppage, or delay of or interference with

2                                                                    A-0362-18T1

the work of Autobuilders or of any other builder or subcontractor; (4) fail to comply with all provisions of this Subcontract or the Contract Documents[;] or (5) act, or fail to act, in any other way which significantly and negatively impacts the timely completion of the Project or otherwise negatively impacts the work in general, then after serving three (3) days' written notice, unless the condition(s) specified in such notice shall have been alleviated within such three (3) days, Autobuilders may, at its option: (a) . . . take such steps as are necessary to overcome the condition, in which case [CNJ] shall be liable to Autobuilders for the cost thereof . . . or (b) terminate the Subcontract for default [and] complete the work either by itself or through others . . . .

. . . .

Notwithstanding anything herein to the contrary, in the event [CNJ] actually or effectively abandons its contract work on the Project, or is otherwise aware of its continuing non-performance or unacceptable work, Autobuilders may exercise its options herein without the requirement of any three[-]day written notice.

In the event of a termination for default under Article 9.1, if the amount paid by Autobuilders to complete the subcontract exceeds the amount due to CNJ for the work it performed prior to the termination CNJ is liable to Autobuilders for the difference.

Article 24.1 of the subcontracts provides the methods for providing notice to CNJ of alleged deficiencies under Article 9.1. Such notices must be sent to the address or telephone number specified in the subcontract by fax, with written

3

confirmation, nationally recognized overnight carrier, or registered mail, return receipt requested.

Article 9.3 provides, "[i]f Autobuilders wrongfully exercises any option under Article 9.1 . . . such exercise shall be deemed a [t]ermination for [c]onvenience and [CNJ will be] compensated as provided for in Article 15" of the subcontracts. Article 15.1 provides that after a termination for convenience, CNJ "shall be paid the amount representing costs which are due . . . for its work as provided in the" subcontracts without being responsible for the costs incurred by Autobuilders after termination.

On September 16, 2015, an Autobuilders representative sent four letters to CNJ, one for each subcontract, alleging deficiencies in CNJ's performance. Although the letters listed verbatim the categories of deficiencies set forth in Article 9.1, they did not identify with specificity any alleged deficiency in CNJ's work. The letters stated Autobuilders

> will accordingly exercise its right to supplement your company's work for any further delays, omissions, lack of materials, failure to follow the schedule, or any other act or omission that relates to any of the above stated issues. [CNJ] will be back charged for all related costs and expenses.

The letters, which were not sent by any of the methods of delivery set forth in Article 24.1, made no mention of a three-day cure period.

A-0362-18T1

On the same day it received the September 16, 2015 notice, CNJ requested in writing clarification of the nature of the deficiencies and an opportunity to cure the deficiencies. CNJ also demanded payment for work it had completed under the subcontracts.

On September 24, 2015, Autobuilders sent CNJ a letter specifying in detail alleged deficiencies in CNJ's work. At the time it sent the September 24, 2015 letter, Autobuilders had already signed at least one subcontract to correct the alleged deficiencies in CNJ's work and paid a subcontractor for that work. Autobuilders refused to pay invoices submitted by CNJ for work it completed on the Project prior to the September 16, 2015 letter. The parties ultimately stipulated the amount sought by CNJ for completed work under the demolition, concrete, and steel subcontracts totaled $110,052.15.

CNJ filed construction liens on the demolition, concrete, and steel subcontracts for its outstanding invoices. It subsequently filed a complaint in the Law Division alleging book account claims and claims under the Construction Lien Law, N.J.S.A. 2A:44A-1 to -38, to recover what it alleges it is due for work completed on the demolition, concrete, and steel subcontracts. CNJ does not seek payment under the site work subcontract, as it concedes it was paid for all work it performed under that agreement.

Autobuilders filed a counterclaim alleging under Article 9.1 CNJ is liable for the costs Autobuilders incurred to complete the site work subcontract. Autobuilders alleged the amount CNJ owes on the counterclaim offsets all amounts Autobuilders owes CNJ, and results in a liability in favor of Autobuilders of $145,107.82.

The matter was tried without a jury over two days before Judge Frank J. DeAngelis. During trial, Autobuilders argued it provided notice and a three-day cure period in conformity with Articles 9.1 and 24.1 and, alternatively, that CNJ abandoned the Project after receipt of the September 16, 2015 letter.

On August 1, 2018, Judge DeAngelis issued a comprehensive oral opinion in which he found Autobuilders provided no evidence that it complied with the notice provisions of Articles 9.1 and 24.1, and failed to provide CNJ with a three-day period in which to cure alleged deficiencies in its work. In addition, Judge DeAngelis found the record contained no evidence CNJ abandoned the Project after the September 16, 2015 notice, given its written request for clarification of the alleged deficiencies on the same day it received the notice. Thus, the judge concluded, Autobuilders terminated the site work subcontract for convenience and is not entitled to recover from CNJ amounts spent after termination of the site work subcontract. Finally, Judge DeAngelis found CNJ

6

established its claim Autobuilders owed it $110,052.15 for work performed on the demolition, cement, and steel subcontracts. In reaching his decisions, the judge made specific credibility determinations based on the the testimony of the witnesses.

On August 14, 2018, the court entered judgment awarding CNJ $110,052.15 in damages and dismissing Autobuilders's counterclaim.

This appeal followed. Autobuilders makes the following arguments for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN MAKING AN AWARD TO CNJ ON THE CONCRETE AND STRUCTURAL STEEL SUBCONTRACTS AS CNJ PROVIDED NO EVIDENCE OF ANY UNPAID COSTS.
>
> POINT II
>
> THE TRIAL COURT ERRED IN NOT MAKING AN AWARD TO AUTOBUILDERS ON ITS COUNTERCLAIM AS AN OVERPAYMENT WAS PROVEN PRIMA FACIE AND UNCONTROVERTED.

## II.

Our scope of review of the judge's findings in this nonjury case is limited. We must defer to the judge's factual determinations, so long as they are

supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). This court's "[a]ppellate review does not consist of weighing evidence anew and making independent factual findings; rather, [this court's] function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). We only review de novo the court's legal conclusions. Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

In addition, this court "must give deference to those findings of the trial judge which are substantially influenced by his or her opportunity to hear and see the witnesses and have the 'feel' of the case, which [this court does] not enjoy upon appellate review." State ex rel. D.M., 451 N.J. Super. 415, 424 (App. Div. 2017) (quoting State ex rel. S.B., 333 N.J. Super. 236, 241 (App. Div. 2000)).

There must be "deference to the trial court's credibility determinations[,]" N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007), "because it 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity

of a witness.'" City Council v. Edwards, 455 N.J. Super. 261, 272 (App. Div. 2018) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

Having carefully reviewed Autobuilders's arguments in light of the record and applicable legal principles, we are satisfied there is substantial credible evidence supporting Judge DeAngelis's findings of fact. We also agree with his legal conclusions CNJ is entitled to recovery for the work it performed under the demolition, concrete, and steel subcontracts, the amount due under those subcontracts was agreed to by the parties and not controverted at trial, and Autobuilders failed to establish its counterclaim. We therefore affirm the August 14, 2018 final judgment for the reasons stated in Judge DeAngelis's August 1, 2018 oral opinion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION