897 A.2d 425

STATE OF NEW JERSEY IN THE INTEREST
OF D.A., JUVENILE–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 13, 2006—Decided May 16, 2006.

Before Judges CUFF, LINTNER and HOLSTON, JR.

*Yvonne Smith Segars*, Public Defender, attorney for appellant (*Lon Taylor*, Assistant Deputy Public Defender, of counsel and on the brief).

*David J. Weaver*, Sussex County Prosecutor, attorney for respondent State of New Jersey (*Jerome P. Neidhardt*, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

CUFF, P.J.A.D.

D.A., a juvenile, entered a guilty plea to acts which, if committed by an adult, would constitute endangering the welfare of a child. In accordance with the plea agreement, D.A. was sentenced to a three-year period of probation with credit for 102 days spent in juvenile detention. Several conditions of probation were also imposed, including no contact with the victim, and no unsupervised contact with children ten years of age or younger. D.A. was also required to register under Megan's Law, *N.J.S.A.* 2C:7–2 to –5. As an additional and unnegotiated condition of probation, D.A. is required to advise the parents of any girl he dates of the terms of the disposition of the charge involving his half-sister, including his Megan's Law status.

It is this additional and unnegotiated condition of probation that is the focus of this appeal. The juvenile contends that this condition circumvents the Megan's Law tier classification system and countermands the non-disclosure provisions of the Code of Juvenile Justice (Juvenile Code). The State responds that the special condition is consistent with the public safety, accountability, rehabilitative and limited disclosure provisions of the Juvenile Code and does not circumvent Megan's Law. We affirm.

D.A. entered a guilty plea to endangering the welfare of his six-year-old half-sister on February 5, 2004. According to the reconstructed record of the plea, the judge confirmed that the Confidential Juvenile Plea Form contained all of the terms of the plea agreement. The State and D.A. agree that the form did not contain the special condition at issue in this appeal. The judge also did not mention it during the proceeding.[1] The judge reviewed with D.A. his constitutional rights. Once assured that D.A. knowingly and voluntarily waived these rights, the judge obtained a factual basis in support of the guilty plea.

---

[1] The juvenile does not argue that he should be able to retract his plea.

The dispositional hearing occurred on February 26, 2004. At some time before the commencement of the hearing, defense counsel learned that the judge contemplated requiring the juvenile to inform the parents of any girl he dated about his Megan's Law offender status. During the hearing, defense counsel argued that there was nothing in the investigation to support that he was a danger to any teenage girl. The judge acknowledged that the juvenile's tier status would likely be low. Nevertheless, the judge felt that the spirit of Megan's Law required notice of his status to the parents of any girl that he dated in order to address "the concerns of the safety and welfare of others." He also cited D.A.'s emotional turmoil and confusion regarding his emerging sexual development and the impact of the conduct of the adult who influenced D.A.'s actions. The judge acknowledged that D.A. would not have to disclose his status to the parents of his girlfriend if D.A. ceased his dating relationship with her. The judge encouraged the juvenile to discuss this condition with his therapist because he would be on probation for three years and he anticipated that the need for disclosure would arise again.

On appeal, D.A. argues that the special condition of probation requiring notification by the juvenile to the parents of any girl that he dates of his status is contrary to the Megan's Law tier classification and notification system and procedures and is also contrary to the non-disclosure provisions of the Juvenile Code. The State responds that the special condition is consistent with the purpose and limited disclosure provisions of the Juvenile Code. It also contends that the condition is not contrary to the notice provisions of Megan's Law.

In fashioning a disposition for a juvenile adjudicated delinquent, the court is required to weigh several factors including the nature and circumstances of the offense and the impact of the offense on the community. *N.J.S.A.* 2A:4A–43a(1), (10). The Legislature has set forth a broad array of dispositions for a juvenile adjudicated delinquent, including various non-custodial measures. *N.J.S.A.* 2A:4A–43b. The judge is specifically authorized to impose any

condition reasonably related to the rehabilitation of the juvenile. *N.J.S.A.* 2A:4A–43b(18).

The judge's discretion in fashioning an appropriate disposition is, of course, informed by the express purposes of the Juvenile Code. Those purposes include the preservation of the family, *N.J.S.A.* 2A:4A–21a; removal of certain statutory consequences of criminal behavior from children who commit delinquent acts and the substitution of a range of sanctions "designed to promote accountability and protect the public," *N.J.S.A.* 2A:4A–21b; and "balanced attention to the protection of the community, the imposition of accountability for offenses committed, fostering interaction and dialogue between the offender, victim and community and the development of competencies to enable children to become responsible and productive members of the community." *N.J.S.A.* 2A:4A–21f.

The juvenile argues that the disposition fashioned by the family court judge violates the non-disclosure provisions of the Juvenile Code. We think this argument misconstrues the privacy provision of the Juvenile Code.

*N.J.S.A.* 2A:4A–60a provides that social, medical, psychological, legal and other records of the court, probation division and law enforcement agencies pertaining to juveniles "shall be strictly safeguarded from public inspection." Section 60a outlines twelve entities or persons who may obtain access to the records and the conditions of access. *N.J.S.A.* 2A:4A–60a(1) to (12). Sections 60b, c, d, e and f outline the circumstances when information about a charge against a juvenile or the adjudication of a charge may or must be provided. Consistent with *N.J.S.A.* 2A:4A–60.1, the Supreme Court has adopted a rule governing the disclosure of information relating to a juvenile. *R.* 5:19–2. In accordance with *N.J.S.A.* 2A:4A–60c(3), upon request, the principal of D.A.'s school would receive information about the charge, the adjudication and the disposition. Furthermore, information about the identity of the juvenile, the offense, the adjudication and the disposition shall be made public when a juvenile has been adjudicated delinquent,

and if the conduct would constitute a crime of the first, second or third degree if committed by an adult, unless the juvenile demonstrates that the disclosure would cause specific and extraordinary harm. *N.J.S.A.* 2A:4A–60f. Here, absent that finding, the charge and disposition would be made public.

 As can be readily seen, *N.J.S.A.* 2A:4A–60 is a rule of limited disclosure; it is not a rule of non-disclosure. *State in the Interest of J.P.F.*, 368 *N.J.Super.* 24, 42, 845 *A.*2d 173 (App.Div.), *certif. denied,* 180 *N.J.* 453, 852 *A.*2d 189 (2004). The disclosure allowed by the statute is "tailored to provide information to organizations and individuals possessing a legitimate interest in the information and as needed for the proper administration of justice." *Ibid.* The provision reflects the concern that juveniles who engage in criminal conduct should not be treated generally as adults. To that end, the Juvenile Code bars the indiscriminate disclosure of information about a juvenile who has been adjudicated delinquent. To the extent that *N.J.S.A.* 2A:4A–60 reflects the legislative decision to treat juvenile offenders differently from adult offenders, the limited disclosure provision of the Juvenile Code may inform the exercise of the considerable discretion bestowed on the family court judge. It does not, however, limit or constrict the fashioning of an appropriate disposition.

 Rather, we perceive the issue as whether the judge mistakenly exercised his considerable discretion in fashioning the disclosure special condition. The Legislature has designated a panoply of remedies to allow a family court judge to fashion a disposition appropriate to the juvenile offender. It reflects a balance between protection of the public and rehabilitation of the juvenile. Here, the disposition fashioned by the family judge is heavily weighed in favor of rehabilitation for D.A. Clearly, however, the judge was concerned about the safety of young girls with whom D.A. may form a dating relationship. Undoubtedly, he recognized that neither the girl nor her parents would be entitled to this information pursuant to *N.J.S.A.* 2A:4A–60, and he decided that the public disclosure required by *N.J.S.A.* 2A:4A–60f should not occur. He

also believed that D.A. would probably be classified as a Tier I Megan's Law offender, which would preclude broad dissemination to the public. Yet, the judge was undoubtedly concerned about a certain limited class of teenage girls who may come in contact with D.A. before he turns eighteen years of age. Moreover, the judge opined that disclosure of this information would require D.A. to be accountable for his actions, thereby aiding in his rehabilitation.

The Juvenile Code expressly seeks a balance between the safety of the public, accountability of the juvenile for his conduct, and rehabilitation of the juvenile offender. *N.J.S.A.* 2A:4A–21. The special condition imposed by the family judge in this case furthers those goals. It also falls within the broad authority of the family judge to construct a disposition that contributes to the rehabilitation of the juvenile. *N.J.S.A.* 2A:4A–43b(18). Therefore, we hold that the special condition requiring disclosure by D.A. or his parents of his status is within the authority of the family judge.

■ D.A. also contends that the disclosure special condition "short-circuits" the Megan's Law tier classification procedure. We disagree.

■ D.A. is subject to Megan's Law. *In re Registrant J.G.*, 169 *N.J.* 304, 319, 777 *A.2d* 891 (2001). Thus, D.A. must register annually with a police agency and provide notice of any address change. *N.J.S.A.* 2C:7–8. *See J.G., supra,* 169 *N.J.* at 319, 777 *A.2d* 891; *J.P.F., supra,* 368 *N.J.Super.* at 32, 845 *A.2d* 173. He will also be classified as a Tier I, Tier II or Tier III offender. The tier classification determines to whom notice will be given of the juvenile's Megan's Law status. Here, D.A. assumes that he will be classified as a Tier I offender. As such, notification is generally limited to local law enforcement agencies. *N.J.S.A.* 2C:7–8c. "The guiding principle is that notification must be limited to those organizations or persons that are 'likely to encounter' the registrant and to whom the registrant poses a threat." *J.P.F., supra,* 368 *N.J.Super.* at 33, 845 *A.2d* 173. Accordingly, the special condition exceeds the notification required by Megan's Law. On

the other hand, the special condition will expire at the end of D.A.'s probationary term.

 The registration and notification provisions of Megan's Law are not part of the disposition entered in a case governed by the Juvenile Code. *State in the Interest of B.G.*, 289 *N.J.Super.* 361, 373, 674 *A.2d* 178 (App.Div.), *certif. denied,* 145 *N.J.* 374, 678 *A.2d* 714 (1996). Stated differently, the tier classification of a Megan's Law offender occurs following disposition, or sentence in the case of adults, and is wholly separate from the disposition or sentence. Here, the condition imposed by the family part judge was an element of the disposition. As an element of a disposition in accordance with the Juvenile Code, the condition is separate and apart from Megan's Law and the procedure utilized in the classification system and the burden of proof imposed on the prosecutor is not applicable.

Affirmed.