**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5252-16T3

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

      Plaintiff-Respondent,

v.

M.C.,

      Defendant,

and

J.R.,

      Defendant-Appellant.

_____

IN THE MATTER OF J.C.-R., a Minor.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 9, 2018**
>
> **APPELLATE DIVISION**

      Argued October 22, 2018 – Decided November 9, 2018

      Before Judges Sabatino, Sumners and Mitterhoff.

      On appeal from Superior Court of New Jersey,
      Chancery Division, Family Part, Ocean County,
      Docket No. FN-15-0211-16.

      Janet A. Allegro, Designated Counsel, argued the
      cause for appellant (Joseph E. Krakora, Public
      Defender, attorney; Janet A. Allegro, on the briefs).

Cynthia L. McGeachen, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Francis A. Raso, Deputy Attorney General, on the brief).

David B. Valentin, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; David B. Valentin, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This appeal involves the standards and procedures for in camera review and judicial disclosure of a parent's presumptively confidential juvenile records in child welfare litigation brought by the Division of Child Protection and Permanency ("the Division"). Although juvenile records disclosure issues have arisen before in other settings, no published opinion to date has addressed them in the context of child welfare litigation brought by the Division.

The Law Guardian in this case objected to a father having unsupervised parenting time with his eighteen-month-old daughter, having learned that he had been adjudicated delinquent several years earlier for committing sexual offenses upon two minors. The father opposed the court reviewing or disclosing his juvenile records, asserting they are confidential under N.J.S.A. 2A:4A-60.

After hearing oral argument, the Family Part judge reviewed the father's records in camera. The judge then released the records in their entirety to counsel, pursuant to a protective order confining their use to the present Title 30 litigation. Eventually, the judge suspended the father's visitation with his young daughter, unless and until he submitted to a psychological evaluation.

On appeal, the father challenges the manner in which the trial court addressed his privacy concerns relating to his juvenile records. Specifically, he argues: the Law Guardian's request for in camera review of the records was based upon hearsay information and was insufficient to trigger such review; the trial court erroneously declined his request to hold a hearing and conduct oral argument after completing the in camera review; and the court failed to adhere to Supreme Court precedent and provide a statement of reasons for its determination to release all 176 pages of his juvenile records to the Division and the Law Guardian. The father does not contest, however, the trial court's restriction of his parenting time. In fact, he surrendered his parental rights to his daughter while this appeal was pending.

For the reasons that follow, we affirm the Family Part judge's decision to conduct an in camera review of the records. We also uphold the judge's denial of the father's request for the court to conduct an additional hearing after the in camera review was completed. However, because the court's decision to

release the records without further hearing was not accompanied by a statement of reasons, as required by case law and Rule 1:7-4, we remand for the court to reconsider the matter, make any appropriate modifications, and generate the requisite statement of reasons.

## I.

Defendant J.R. ("the father") and defendant M.C. ("the mother"), are the biological parents of a daughter, J.C.-R., who was born in December 2014.[1] The parents were never married and did not live together at the time of the allegations in this case.

### A.  The Division's Initial Involvement

The Division was first notified of concerns regarding the child's welfare in April 2015, upon receiving a report that the mother had expressed suicidal ideations and the father had a history of stealing.

Through an ensuing investigation, the Division learned that the mother had a history of substance abuse and was on probation through the Pretrial Intervention Program for possession of crack cocaine and burglary.  The investigation revealed the father also had a history with the Division.  In

---

[1]  We use initials in this opinion to protect the privacy of the parents and the child and also because of the father's interests in the confidentiality of his juvenile records.  See R. 1:38-3(d)(5) and (8) (regarding juvenile records), and R. 1:38-3(d)(12) (regarding Division records).

particular, when he was fourteen, the father was arrested in February 2009 and again in May 2009, and charged with multiple counts of aggravated sexual assault for sexually assaulting his nine-year-old neighbor and his eleven-year-old cousin. The Division was contacted after each of those incidents.[2]

In May 2015, the Division closed its initial investigation into the parents, determining the April 2015 allegations of abuse were unfounded.

B. The 2016 Referral

On March 11, 2016, the Division received a new referral from police, reporting a concern for the child's safety while she was in the care of her mother. The report was made by the child's maternal grandmother, who informed police that the mother had left home that day with the child in her vehicle, and the grandmother had observed the mother driving erratically. The grandmother told the police the mother abused drugs frequently, and that she would often leave home for several days at a time, sometimes bringing the child with her and sometimes leaving the child with the grandmother.

The Division dispatched a special response worker to investigate these reports. After being confronted, the mother admitted that she had bought crack cocaine and smoked it in the child's presence. She was arrested and charged with possession of narcotics and the possession of drug paraphernalia.

---

[2] We discuss in more depth these juvenile matters, infra.

C. <u>The Division's Litigation</u>

On March 11, 2016, the Division case worker conducted an emergency "Dodd"[3] removal of the child pursuant to N.J.S.A. 9:6-8.29 to -8.30. The child was temporarily placed with her maternal grandmother. The Division filed a verified complaint in the Family Part to appoint a Law Guardian with temporary custody. The father was named in the complaint as a "dispositional defendant" only.

After an initial hearing, the judge determined that removing the child was necessary to avoid ongoing risk to the child's life, safety, or health. Pursuant to N.J.S.A 30:4C-11.2, the judge ordered the emergency removal of the child from the care of the mother. The child was placed in the immediate custody, care, and supervision of the Division. The parents were allowed to have weekly visitation supervised by the Division, and were required to attend substance abuse evaluations.

In April 2016, the trial court ordered the father to submit to a psychological evaluation and extended assessment, and attend parenting classes. The order specified that if all counsel consented after receiving the

---

[3] A "Dodd removal" refers to the emergency removal of a child without a court order, pursuant to the Dodd Act, N.J.S.A. 9:6-8.21 to -8.82. <u>N.J. Div. of Youth & Family Servs. v. P.W.R.</u>, 205 N.J. 17, 26 n.11 (2011).

results of the father's assessment, the father could begin unsupervised visitation on a self-executing basis.

D. The Request for Disclosure of the Father's Juvenile Records

In May 2016, the parents appeared before the Family Part for a Title 30 summary proceeding. During that proceeding, the mother waived her right to a fact-finding hearing and stipulated that she was a person in need of services pursuant to N.J.S.A. 30:4C-12. At the same proceeding, the father requested, through his counsel, unsupervised visitation with the child. The Law Guardian opposed the request, based on a belief that the father had committed sexual offenses as a juvenile, asserting concerns about contact between the father and any minor child. Given those concerns, as expressed in a chambers conference and also on the record in court, the judge rejected the father's request for unsupervised parenting time with the child, pending an exploration of the allegations. The court ordered that any motion for the release of the father's juvenile records be filed within twenty days and any response be filed fifteen days thereafter.

The Law Guardian promptly filed a motion for the release of the father's juvenile records, pursuant to N.J.S.A. 2A:4A-60. In pertinent part, the Law Guardian's supporting certification stated:

> [I]nformation was relayed that [the father] has an
> extensive history as a juvenile that may involve sexual

A-5252-16T3

offenses, assault offenses, and incarceration at a juvenile facility.

This court has the parens patriae responsibility for the safety, protection, and best interests of [the child]. It is imperative that the records relating to [the father's] juvenile history be released prior to any decisions about unsupervised contact between [the father] and [the child].

The Division submitted a letter to the court supporting the Law Guardian's motion, asserting that "[t]here is an indication that these records may include information regarding sexual offenses. As [the father] is requesting unsupervised visitation with [the child], the information contained in these records is relevant and the court should have access to these records to make [a] determination."

The father opposed the Law Guardian's motion in a letter brief. The father asserted his juvenile records were protected by Rule 5:19-2(b). He further emphasized that N.J.S.A. 2A:4A-60 only authorizes the disclosure of juvenile records in specific limited instances. The father argued the Law Guardian's allegations were based on uncorroborated, vague statements, and were not sufficient to gain access to his juvenile records.

After hearing oral argument, the judge rejected the father's position, reasoning that the juvenile records "appear[] to be of a sexual nature, and the court has the obligation to at least read through it to determine whether or not

it should be released to the attorneys for the protection of the child, because that is the overwhelming concern." The judge stated that she accordingly would perform an in camera review of the records. The judge rejected the father's request that she hold another hearing after completing the in camera review, advising counsel that she would simply inform them by letter about her ultimate determination on whether the records would be released.

The father then applied to this court for leave to appeal and a stay of the release of his juvenile records. Meanwhile, the parties appeared before the trial judge for a compliance review hearing. The father was not present at that hearing, although he was represented by counsel. At the hearing, the Division reported that the father had been attending supervised visits with the child. The judge noted she was aware of the father's pending application in the Appellate Division and stated that she would not disseminate any of the father's juvenile records until this court issued a decision.

On September 30, 2016, another panel of this court denied the father's motion for leave to appeal and his motion for stay of the release of his juvenile records.

Thereafter, on November 29, 2016, the trial judge held a Title 30 summary review hearing. At that hearing, the mother consented to the Division's continued services pursuant to N.J.S.A. 30:4C-12. The Division

A-5252-16T3

informed the judge that the father had not been in contact with the Division since September 2016. The judge was also informed that this court had denied the father's appellate motions. The judge accordingly indicated that she planned to release the father's juvenile records. On December 12, 2016, the judge released the father's juvenile records to counsel under a protective order. In pertinent part, the protective order states that "for good cause shown," the copies of the records "shall be released . . . with the understanding that the information contained therein is to be used only for purposes of the pending litigation" and "shall not be disclosed to any other person for any reason, nor may it be disseminated or made public by any means . . . without the express written permission of the court." The order also provides "under no circumstances [are] the report(s) to be discussed, revealed, or disclosed to the child." The records were redacted to mask the minor victims' identities in various places.

E. Contents of the Juvenile Records

The father's juvenile records, which have been supplied to us on appeal in a confidential appendix, reflect that he was charged with multiple counts of aggravated sexual assault. He eventually pled guilty to juvenile delinquency for an offense which, if committed by an adult, would comprise one count of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4, and one

10

count of what would comprise second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). The aggravated sexual assault charge was dismissed for dispositional purposes. The father's juvenile disposition required him to be committed for eighteen months at a residential treatment program for juvenile sex offenders; complete three years of probation and six months of post-incarceration supervision; and refrain from any contact with the victims and any inappropriate contact with other children under the age of twelve.

The father has no other juvenile adjudications. He has no adult criminal record. Nearly seven years passed between the time of his juvenile adjudication in 2009 and the 2016 hearing that granted the release of his juvenile records in this Title 30 case.

More specifically, the juvenile records reveal that, when the father was fourteen years old, he was accused of having a nine-year-old girl perform oral sex on him on two separate occasions. The father denied receiving oral sex on the first occasion, but admitted to the second. The father was arrested in February 2009, and charged with three counts of the juvenile equivalent of aggravated sexual assault. Several months later, the father was accused of forcibly having vaginal and anal intercourse with his eleven-year-old cousin. The cousin told police this assault had occurred while they were both at their grandmother's house. The father denied this allegation. The father was

arrested in May 2009, and charged with the juvenile equivalent of one count of aggravated sexual assault.

In addition to the police and the prosecutor's investigatory reports for the February and May 2009 arrests, the juvenile records also contain the following items: (1) school records of the father, including a child study team psychological assessment from November 2005, an educational assessment from March 2003, and a pediatric neurologic consultation from May 2003; (2) statements from the nine-year-old victim's father and sister; (3) statement from the father after the February 2009 arrest; (4) a juvenile pre-dispositional report; (5) juvenile criminal complaints and the order of disposition; (6) a psycho-diagnostic evaluation from July 2009; (7) a psychiatric evaluation from August 2009; and (8) a conduct report on the father's behavior while he had been residing at a Youth Shelter.

In the psycho-diagnostic evaluation performed in July 2009, a psychologist noted the father had "maintained total innocence" when he discussed the reason for his arrest. Specifically, the father told the evaluator that the victim of the February 2009 arrest had initiated sexual activity with him. The father completely denied the sexual assault of his cousin that led to his May 2009 arrest. The psychologist indicated in his report that the father may not have been truthful during the interview, noting that the father's

responses contradicted the investigative finding and the statements he had previously given to the police.

The psychologist performed two juvenile risk assessment tests. The first was the Juvenile Sex Offender Assessment Protocol-II ("J-SOAP-II"), which is an instrument that provides general risk estimates for juvenile sex offenders. The second risk assessment test was the Structured Assessment of Violence Risk in Youth ("SAVRY"), which is designed to help professionals evaluate a juvenile's risk for violence. The psychologist concluded that the father's J-SOAP-II score fell "at the very top of Low risk or [the] very bottom of the Moderate risk level," but noted the father's inconsistent statements during the interview could impact the accuracy of that score. By comparison, the expert found "if [the father] is guilty [of the allegations], then he must be viewed as . . . at least a moderate risk for sexual recidivism." The psychologist separately concluded that the father's SAVRY assessment fell within the low range of risk.

F. Continued Developments in the Title 30 Litigation

At a preliminary hearing in February 2017, the mother surrendered her parental rights concerning J.C.-R. to her own parents. The court noted the father had not been compliant with the Division's requests for services, nor had he been compliant with court orders. Furthermore, the court noted that the

father had not participated in supervised visitation with the child since September 2016, and the Division had not been in contact with the father since that time.

In June 2017, the court held a case management conference. The father again was not present at the hearing, but was represented by counsel. The court noted the Division had searched for and attempted to serve him, but were unable to locate him. The judge accordingly suspended the father's visitation rights because of his non-compliance with court orders to submit to a psychological evaluation. The judge also entered an order terminating the Title 30 litigation.

Subsequently, the father appealed the trial court's August 10, 2016 order granting the Law Guardian's motion for the disclosure of his juvenile records, and denying his motion for stay. In November 2017, while this appeal was pending, the father voluntarily surrendered his parental rights to the child.

II.

A.

N.J.S.A. 2A:4A-60 generally provides for the confidentiality of juvenile records, declaring:

> a. Social, medical, psychological, legal and other <u>records</u> of the court and probation division, and records of law enforcement agencies, <u>pertaining to juveniles</u> charged as a delinquent or found to be part

> of a juvenile-family crisis, <u>shall be strictly safeguarded from public inspection</u>.
>
> [(Emphasis added).]

However, this confidentiality mandate is subject to several enumerated exceptions authorizing disclosure. Among other things, subsection (a)(1) provides that juvenile records shall be made available to "<u>[a]ny court</u> or probation division." N.J.S.A. 2A:4A-60(a)(1) (emphasis added). Subsection (a)(6), meanwhile, provides that juvenile records shall be made available to "<u>[a]ny person or agency interested in a case or in the work of an agency</u> keeping the records, <u>by order of the court for good cause shown</u> . . . ." N.J.S.A. 2A:4A-60(a)(6) (emphasis added). Additionally, subsection (c)(4) allows juvenile records to be disclosed to "<u>[a] party in a subsequent legal proceeding involving the juvenile</u>, upon approval by the court." N.J.S.A. 2A:4A-60(c)(4) (emphasis added).

These and various other exceptions set forth in the Title 2A statute recognize that the policy interests generally favoring the confidentiality of juvenile records must yield at times to countervailing needs. In balancing those competing interests, the trial court serves as an important gatekeeper. The court's role is reflected in <u>Rule</u> 5:19-2(b), which provides:

> Social, medical, psychological, legal and other records of the Court, Probation Division and law enforcement agencies pertaining to juveniles charged as

15

delinquents <u>shall be strictly safeguarded from public inspection and</u> shall be made available only pursuant to N.J.S.A. 2A:4A-60 to -62. Any application for such records shall be made by motion to the court.

[(Emphasis added).]

We have interpreted <u>Rule</u> 5:19-2(b) as being "a rule of limited disclosure, not a rule of non-disclosure." <u>State ex rel. D.A.</u>, 385 N.J. Super. 411, 417 (App. Div. 2006). "[D]isclosure allowed by the statute [N.J.S.A. 2A:4A-60] is 'tailored to provide information to organizations and individuals possessing a legitimate interest in the information and as needed for the proper administration of justice.'" <u>Ibid.</u> (quoting <u>State ex rel. J.P.F.</u>, 368 N.J. Super. 24, 42 (App. Div. 2004)).

In <u>D.A.</u>, 385 N.J. Super. at 414, a juvenile entered a guilty plea for a sexual offense. As a special condition of the guilty plea, the Family Part judge required the juvenile to "advise the parents of any girl he dates of the terms of the disposition of the [sexual assault] charge involving his half-sister, including his Megan's Law status." <u>Ibid.</u> The juvenile appealed, arguing that being required to disclose his disposition violated the non-disclosure provisions of the Juvenile Code. We rejected that argument and held that:

> To the extent that N.J.S.A. 2A:4A–60 reflects the legislative decision to treat juvenile offenders differently from adult offenders, <u>the limited disclosure provision of the Juvenile Code may inform the exercise of the considerable discretion bestowed on</u>

the family court judge. It does not, however, limit or constrict the fashioning of an appropriate disposition.

[Id. at 417 (emphasis added).]

Here, the context for the requested disclosure is a child welfare case brought by the Division under N.J.S.A. 30:4-12, a context not presently addressed in a published opinion. Although the father himself was not charged here with engaging in child abuse or neglect, he was an important dispositional defendant in the case in his capacity as the co-parent of the young child whose safety and welfare were at stake. In particular, the Family Part judge was required to consider, among other things, whether the child could be safely entrusted to the father's care on either a supervised or unsupervised basis.

The welfare of a child is the ultimate controlling factor when a court determines questions of visitation, custody, and the upbringing of a child. Wilke v. Culp, 196 N.J. Super. 487, 497 (App. Div. 1984). Indeed, "the 'best interests of the child' standard is more than a statement of the primary criterion for decision or the factors to be considered; it is an expression of the court's special responsibility to safeguard the interests of the child . . . ." Kinsella v. Kinsella, 150 N.J. 276, 317 (1997). To this end, the best interest analysis "requires the court to consider any and all material evidence." Ibid. Moreover, the "range of facts that may be material and relevant to a custody determination is broad." Id. at 316.

When, as here, a child welfare case is brought by the Division under Title 30, the court applies the well-established standard of the best interest of the child. See N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 33 (2013) (distinguishing between actions under N.J.S.A. 30:4C-12 and N.J.S.A. 9:6–8.21 and holding that in Title 30 proceedings "the court's determination is based on the best interests of the child standard, not the specific language in the abuse and neglect law"); see also N.J. Dep't of Children & Families v. I.S., 214 N.J. 8, 41 (2013) (reviewing an award of custody made after a Title 30 proceeding, and finding the trial court appropriately "applied a best interests test" on those issues). The best interest analysis requires the court to consider a number of well-known general factors, which include, but are not limited to, the safety of the child, and the fitness of the parents. See N.J.S.A. 9:2-4(c).

The Division argues that the Law Guardian presented an adequate showing of "good cause" to have the Family Part judge review the father's juvenile records, considering that he was requesting unsupervised visitation with a minor female and the Division was aware of indicia of the father's past juvenile adjudications involving sex offenses against minor females. The Division stresses that it is tasked with ensuring the health and welfare of children, and therefore has a statutory responsibility to consider any relevant facts that could impact the health or safety of a child. See N.J.S.A. 30:4C-3;

<u>see also</u> N.J.S.A. 30:4C-1.1 (legislative findings and declarations). Likewise, the Law Guardian for the minor had important fiduciary responsibilities concerning this child's best interests. <u>See</u> N.J.S.A. 9:6-8.23; <u>see also</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, Official Comment for Rules 5:8A and 5:8B (2018). Moreover, the Family Part has the ultimate responsibility and authority over the child's welfare in such litigation.

Given the strong policies underlying the need to assure a child's safety and the promotion of the child's best interests in a Title 30 proceeding, the Family Part has wide authority to consider whether the otherwise-confidential juvenile records of a parent should be disclosed for use in the child welfare litigation. That authority should be exercised subject to a protective order to prevent dissemination of those records outside of that confidential setting. <u>See</u> <u>R.</u> 5:3-2 (mandating confidentiality in cases brought by the Division in the Family Part).

In balancing the competing interests, the context matters. Here, confidential records were disclosed and used in a confidential case.

The established general process for considering whether privileged material should be disclosed for use within a litigation is the court's review of that material <u>in camera</u>. <u>See</u> <u>Kinsella</u>, 150 N.J. at 325; <u>see also</u> Pressler & Verniero, cmt. 6 on <u>R.</u> 4:10–2(e) (2018) ("If a claim of privilege is disputed,

an <u>in camera</u> review by the court of the allegedly privileged material is ordinarily the first step in determining the issue.").

In <u>State v. Van Dyke</u>, 361 N.J. Super. 403, 412 (App. Div. 2003), a criminal case that involved a request for disclosure of juvenile records pursuant to N.J.S.A. 2A:4A-60, we noted that balancing the juvenile's right to privacy against the need for disclosure in the specific case can be accomplished by an <u>in camera</u> review of the records. In balancing these considerations, "the party seeking an <u>in camera</u> inspection must advance 'some factual predicate which would make it reasonably likely that the file will bear such fruit and that the quest for its contents is not merely a desperate grasping at a straw.'" <u>Ibid.</u> (quoting <u>State v. Harris</u>, 316 N.J. Super. 384, 398 (App. Div. 1998) (observing that "[i]t is generally not necessary for a defendant to establish that the [privileged material] <u>actually contains</u> relevant information so long as the proper factual predicate has been met.") (emphasis added).

This court reviews a trial court's ruling on a motion for disclosure of privileged or confidential records under an abuse of discretion standard. <u>See State v. Williams</u>, 239 N.J. Super. 620, 626 (App. Div. 1990); <u>see also State v. Milligan</u>, 71 N.J. 373, 384 (1976) ("The appropriate standard for reviewing . . . a motion for disclosure is to determine whether the trial court abused its discretion after weighing the competing considerations of the balancing test.").

20                                                        A-5252-16T3

B.

We now turn to the discrete arguments raised by the father in challenging the manner in which the Family Part judge in this case conducted the review of his juvenile records and ordered their disclosure through a protective order. In essence, the father argues that three procedural errors occurred in the trial court: (1) the Law Guardian and the Division presented an insufficient showing of relevancy and need to trigger the in camera review; (2) the court should have conducted a hearing after completing the review; and (3) the court should have provided reasons for its determination before releasing all of the records. We reject the first two arguments but concur with the third.[4]

As to the father's first point, we are satisfied the trial court was presented with sufficient grounds to justify its decision to perform an in camera review of his juvenile records. The Division's verified complaint in the Title 30 case specifically alleged that the father had been "arrested and charged with sexual

---

[4] In an argument not joined by the Law Guardian, the Division contends we should not address these arguments because the father has surrendered his parental rights and the records have already been disclosed, and therefore the matter of disclosure is allegedly moot. We decline that suggestion. The issues presented are of sufficient public interest and importance to warrant our consideration in this opinion, and to guide future cases. Guttenberg Sav. & Loan Ass'n v. Rivera, 85 N.J. 617, 622-23 (1981). Moreover, we were advised by defense counsel at oral argument that she has consulted with J.R. and he continues to desire an appellate ruling as to the validity of the release of his confidential records, even though the release has already occurred.

A-5252-16T3

abuse in February 2009." After the litigation was filed, the Law Guardian separately certified that she had also learned that the father "has an extensive history as a juvenile that may involve sexual offenses, assault offenses, and incarceration at a juvenile facility."

These certified submissions are not informal conjectures. In certifying factual assertions to a court, the author of such a certified submission must represent they are true, with an awareness that if they are willfully false, the author is subject to punishment. See R. 1:6-6. The Family Part judge clearly had a reasonable basis from these formal submissions potentially relating to the critical issue of the child's safety while in the father's care to evaluate the contents of the records in camera. The father's privacy rights were not unduly infringed by that review. The Division had already been notified of the juvenile incidents in 2015 in the ordinary course of reporting, signifying that some disclosure had already occurred. The approximate seven-year passage of time since the juvenile records were created did not render them per se irrelevant to this child welfare case. At oral argument on the appeal, counsel for the Law Guardian assured the panel that her office would not indiscriminately demand in camera review of a parent's records in every case where a parent has a juvenile history. We accept that representation, and

expect the Division and the Attorney General will exercise comparable restraint.

Second, we discern no abuse of discretion by the trial court in declining to conduct a hearing with counsel after reviewing the records in camera. The Supreme Court has instructed that such a post-review hearing is optional, not mandatory. In State ex rel. B.C.L., 82 N.J. 362, 381 (1980), the Supreme Court stated:

> Although the disclosure decision will significantly affect the juvenile's welfare, a full hearing with oral testimony will not always be necessary. If the court believes that a determination can be fairly made solely on the basis of the moving papers and case record, a hearing is not required. If the court decides to hold a hearing, it should be a summary proceeding limited in scope to the nature of the questions involved. The court has discretion to hear oral testimony, to restrict the hearing to legal argument or to deny one altogether.
>
> [Ibid. (emphasis added) (footnote omitted).]

Here, the parties were already afforded a fair opportunity after the filing of the Law Guardian's motion to present oral argument in favor of and opposition to disclosure. The court made clear to counsel that it planned to review the records in camera for relevancy, and would order their disclosure only if such relevancy were apparent. No abuse of discretion occurred by the court in declining a "second hearing."

That said, we do agree with the father's third point that the trial court erred in not issuing a statement of reasons after it concluded from the in camera examination the records should be disclosed in their entirety for use in this litigation. The Court in B.C.L. expressly mandated that such reasons be provided by the court, regardless of whether a hearing was held. Id. at 381-82 ("Regardless of whether a hearing is held, however, the . . . [c]ourt must state its reasons for disclosure or nondisclosure on the record."). Moreover, a statement of reasons is vital to enable this court's meaningful appellate review. See R. 1:7-4.

We reject the Division's argument that a remand for a statement of reasons is now unnecessary because the relevancy of the juvenile records to this case is self-evident. Although the records supplied to us in the appellate appendix do contain various components (such as psychological reports) that would appear to be germane to visitation and parenting time issues, other items are less obviously relevant (such as portions of the father's school records), and the disclosure may have been overbroad. We therefore order a remand to allow the trial court to express its reasons for deciding to disclose the various categories of documents within the records. A document-by-document or page-by-page explanation is not required, insofar as the documents may

24

reasonably be clustered into groups. The trial court shall have the discretion to modify its original determination if it sees fit to do so.

Lastly, we note that the protective order issued in this case may benefit from modest clarification. At oral argument on the appeal, all parties agreed that in order for the disclosed juvenile records to be used outside of this litigation, an appropriate motion must be filed with the trial court on notice to the father. In addition, the protective order lacks any provision calling for the destruction or return of the confidential juvenile records at the end of the Title 30 case. On remand, we request the trial court to consider revising the order accordingly.

If, following the trial court's issuance of a statement of reasons and any revisions to the protective order, a party seeks renewed appellate review, a new appeal may be filed in due course. We do not address here whether such a second appeal would be viable or moot. For the present, we have issued this opinion in the hope that it may provide Family Court judges and practitioners with guidance in dealing with such disclosure requests going forward.

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5252-16T3