# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1603-25

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

THOMAS J. JACKSON,
a/k/a MONEY,

     Defendant-Appellant.

_____

     Argued May 20, 2026 – Decided June 17, 2026

     Before Judges Chase and Augostini.

     On appeal from an interlocutory order of the Superior
     Court of New Jersey, Law Division, Cumberland
     County, Indictment No. 16-09-0787.

     Margaret McLane, Assistant Deputy Public Defender,
     argued the cause for appellant (Jennifer N. Sellitti,
     Public Defender, attorney; Margaret McLane, of
     counsel and on the briefs).

     Stephen Sayer, Assistant Prosecutor, argued the cause
     for respondent (Jennifer Webb-McRae, Cumberland
     County Prosecutor, attorney; Stephen Sayer, of counsel
     and on the brief).

PER CURIAM

On leave granted, defendant Thomas Jackson appeals from the trial court's order denying his motion to compel production of an internal affairs file concerning the lead detective in the case, R.B.[1] For the following reasons, we vacate and remand.

I.

We briefly summarize the history of this matter to give context for our discussion of the issue raised on appeal. After a lengthy investigation by the Cumberland County Prosecutor's Office (CCPO), a grand jury indicted several individuals, including defendant, for narcotics distribution. Specifically, defendant was indicted for: second-degree conspiracy to distribute heroin or cocaine, N.J.S.A. 2C:5-2(a) and 2C:35-5(a) (count 1); third-degree conspiracy to possess heroin or cocaine, N.J.S.A. 2C:5-2(a) and 2C:35-10(a)(1) (count 2); third-degree conspiracy to distribute marijuana, N.J.S.A. 2C:5-2(a) and 2C:35-5(b)(11) (count 3); fourth-degree conspiracy to possess marijuana, N.J.S.A. 2C:5-2(a) and 2C:35-10(a)(3) (count 4); first-degree possession of more than five ounces of cocaine, N.J.S.A. 2C:35-5(a) (count 23); second-degree

---

[1] We use initials to protect the identity of the detective as this is an ongoing investigation.

A-1603-25

possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a) (count 24); third-degree possession of heroin or cocaine, N.J.S.A. 2C:35-10(a)(1) (count 25); second-degree possession of a gun while committing a drug offense, N.J.S.A. 2C:39-4.1(a) (count 26); and second-degree possession of a gun as a certain person, N.J.S.A. 2C:39-7(b)(1) (count 35).

R.B. served as the "lead investigator" for this case. R.B.'s responsibilities for this case included: preparing affidavits, wiretap applications, and GPS orders; surveillance of phone calls; taking photos; conducting background investigations; obtaining documents to assist in identification of individuals; and accessing public records to identify individuals and vehicles. R.B. reported to two supervisors on this case, Sergeant Mike Donato and Lieutenant Steve O'Neill.

A joint trial for Jackson and three of his co-defendants began in February 2020 but because of the COVID-19 pandemic ended in a mistrial without a verdict being reached. R.B. testified at the trial.

A retrial was scheduled to start in July 2025. On July 7, 2025, following an ex-parte application by the State, the trial court signed an order requiring the

State to disclose information to defendant in the form of a <u>Brady</u>/<u>Giglio</u>[2] letter concerning R.B. The disclosure was subject to a protective order, limiting the use of such material "only for the representation of [] defendant in the captioned case and shall not be permitted to transmit the information disclosed to any third party."

In the letter, the State wrote "[t]he following disclosure provides potential impeachment material for a law enforcement witness who may be called by the State to testify at trial." The State then disclosed that:

> [R.B.] has a pending internal affairs investigation bearing upon integrity. There is pending a CCPO administrative investigation for alleged inappropriate sexual contact, child endangerment and violation of the CCPO Rules and Regulations, including Section 3:2, Subsection 1, "General Conduct of Employees." These allegations do not relate to On-Duty conduct.

The State further acknowledged:

> "[b]ecause impeachment material relating to the law enforcement member named above may arguably relate to witness credibility, disclosure is required. The State specifically reserves the right to argue that any or all of the disclosure set forth herein should not be ruled evidentiary at trial or any other proceeding."

Initially, R.B. was included on the State's witness list.

---

[2] <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963); <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972).

A-1603-25

On July 15, 2025, as jury selection began, the defense moved to compel the State to comply with <u>Brady</u> and <u>Giglio</u>, and to vacate the protective order. The same day, the court briefly addressed the matter. During the colloquy, the State disclosed that the matter had come to its attention in early 2025 and then stated that they may not call R.B. as a witness. The court then framed the issue in terms of witness impeachment: "If it's for credibility only, which is my understanding of what this would be, and he is not going to testify, why would that be disclosed?" The court then determined that it would not rule on the motion, stating:

> I'm not going to decide that right now but I'm going to give everybody a basic understanding of what the court's opinion is of this. If the individual testifies, I will address this motion. If the individual does not testify, there's no need for me to address the motion.

The defense objected to the court's refusal to rule on the motion, arguing that disclosure was required regardless of whether R.B. testified at trial. The State then noted that they "[did] not intend to call [R.B.] at this time."

The second trial began but ended in another mistrial because of an issue involving one of the defense attorneys. The court then held a case management conference on November 18, 2025. At that conference, the court reiterated that the motion to disclose was previously resolved in favor of the State because they

5

were not calling R.B. to testify at trial. At the request of defendant, an order denying defendant's motion was entered.

This interlocutory appeal follows with defendant arguing in a single point:

> THE STATE IS WRONGFULLY WITHHOLDING EXCULPATORY AND IMPEACHMENT EVIDENCE FROM THE DEFENSE. THE COURT ERRED IN DENYING THE MOTION TO COMPEL.

## II.

We "generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." State v. Ramirez, 252 N.J. 277, 298 (2022) (quoting State v. Brown, 236 N.J. 497, 521 (2019)). We apply this standard to "a trial court's ruling on a motion for disclosure of privileged or confidential records." N.J. Div. of Child Prot. & Permanency v. M.C., 456 N.J. Super. 568, 585 (App. Div. 2018). "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)) (internal quotation marks omitted).

"Whether evidence is material and thus subject to disclosure under the Brady rule is a mixed question of law and fact." State v. Marshall, 148 N.J. 89,

6

185 (1997); see also State v. Robertson, 438 N.J. Super. 47, 64 (App. Div. 2014). We give deference to the supported factual findings of the court. State v. Pierre, 223 N.J. 560, 577 (2015) (quoting State v. Harris, 181 N.J. 391, 416 (2004)). However, our review of a trial court's application of the Brady rule is de novo. Marshall, 148 N.J. at 185.

III.

"To guarantee fair and just trials and promote the search for truth, our court rules provide a criminal defendant with broad pre-trial discovery." State v. Morgan, 479 N.J. Super. 420, 429 (App. Div. 2024) (citing State v. Scoles, 214 N.J. 236, 251-52 (2013)). "In order to ensure just and fair proceedings, our court rules have 'adopted an open-file approach to pretrial discovery in criminal matters post-indictment.'" State v. Higgs, 253 N.J. 333, 354 (2023) (quoting Scoles, 214 N.J. at 252). We have noted, however, that "there are limits to a defendant's automatic right to broad discovery to keep the process from 'transform[ing] . . . into an unfocused, haphazard search for evidence.' As such, to be subject to disclosure, a defendant can only seek information relevant to the issues in the case." Morgan, 479 N.J. Super. at 429 (alteration and omission in original) (internal citation omitted) (quoting State v. Arteaga, 476 N.J. Super. 36, 53 (App. Div. 2023)).

7

Rule 3:13-3(b) prescribes the State's obligations to produce exculpatory and impeachment evidence to defendants. Specifically, Rule 3:13-3(b)(1)(A) to (K) provides a list of relevant material the State is required to produce to defendants; specifically, that such discovery "shall include exculpatory information or material." This rule codifies the standards set forth by the U.S. Supreme Court in Brady and Giglio. Higgs, 253 N.J. at 354-55. Rule 3:13 entitles criminal defendants "'to broad discovery' because it 'advances the quest for truth.'" Ramirez, 252 N.J. at 295 (quoting Scoles, 214 N.J. at 252).

The standard set forth in Brady concluded that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Higgs, 253 N.J. at 355 (quoting Brady, 373 U.S. at 87). This standard was expanded in Giglio, where the Supreme Court concluded, "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." Ibid. (quoting Giglio, 405 U.S. at 154) (internal quotation marks omitted).

Our Supreme Court has applied the Brady/Giglio standard in concluding "the State's obligation to disclose is 'not limited to evidence that affirmatively

tends to establish a defendant's innocence but would include any information material and favorable to a defendant's cause even where the evidence concerns only the credibility of a State's witness.'" State v. Carter, 91 N.J. 86, 111 (1982) (quoting State v. Carter, 69 N.J. 420, 433 (1976)).  Moreover, our Court has determined that "[i]mpeachment evidence, as well as exculpatory evidence, is governed by the Brady rule."  State v. Hyppolite, 236 N.J. 154, 165 (2018).  The Brady rule also includes "[t]he obligation" to share "impeachment evidence within the prosecution's possession."  State v. Nash, 212 N.J. 518, 544 (2013) (citing Strickler v. Greene, 527 U.S. 263, 280 (1999)).

In Higgs, our Supreme Court concluded:

> To ensure that defendants in criminal trials are provided with the discovery necessary to adequately prepare for trial, defendants must be allowed, under certain circumstances, to access documents in law enforcement's internal affairs files.  This is consistent with the State's obligation to produce exculpatory and impeachment evidence, as the Attorney General has conceded in this matter.
>
> [253 N.J. at 357.]

Also pertinent to this matter are the standards set forth in the Attorney General's Internal Affairs Policy & Procedures (rev. 2022) (IAPP) and Attorney General's Law Enforcement Directive No. 2019-6, Directive Establishing County Policies to Comply with Brady v. Maryland and Giglio v. United States

9

(Dec. 4, 2019).  Both the Directive and the IAPP carry the "force of law for State and local law enforcement."  Higgs, 253 N.J. at 356 (quoting In re Att'y Gen. Directive Nos. 2020-5 & 2020-6, 246 N.J. 462, 487-88 (2021)).

Under the Directive, all County Prosecutors were ordered to implement policies consistent with the directive, so that they were in full compliance with Brady and Giglio.  Directive No. 2019-6 at 2.  Regarding Giglio material, the Attorney General provided a non-exhaustive list of potential material relating to State investigative witnesses.  One example it gives as potential Giglio material is "[a]ny allegation of misconduct bearing upon truthfulness, bias, or integrity that is the subject of a pending investigation."  Id. at 7.

The directive then provides procedures for disclosure, stating "there are three possible outcomes:  (1) no disclosure; (2) disclosure will be made to the defense; or (3) disclosure will be made to the court for an ex parte, in camera, judicial review."  Id. at 8.  If a disclosure is made, the directive provides that prosecutors must "seek redactions to protect the privacy interests of third-parties and investigative personnel," as well as "protective orders to limit the use and further dissemination of the material."  Ibid.

We next apply the foregoing general principles to the present facts. We preface our analysis with the understanding that this is not a matter of admissibility at trial, but rather what defendant is entitled to in discovery.

Defendant contends the trial court erred in denying his motion because it determined the State was not planning to call R.B. at the retrial. Specifically, defendant asserts this does not excuse the State from its obligation to provide complete discovery. We agree.

In Kyles v. Whitley, a defendant who was convicted of first-degree murder by a jury and sentenced to death argued that the State violated Brady by suppressing impeachment material regarding an uncalled police informant who was "essential" to the investigation. 514 U.S. 419, 445 (1995). The Court found that the State's failure to disclose suspicious physical evidence and witness testimony could have led a jury to numerous possible findings, thus, since they were not disclosed, this was not a fair trial and there were Brady violations. Id. at 454. Additionally, in State v. Williams, the State argued that when a superior officer who had made racial remarks during a briefing on the case was not going to testify at trial, the evidence related to his racial remarks were not Brady/Giglio material. 403 N.J. Super. 39 (App. Div. 2008), aff'd as modified, 197 N.J. 538 (2009). We disagreed and held that information that impugns the credibility of

11

a "superior officer" must be turned over to the defense even if the State decides not to call that officer at trial. Id. at 47. As we explained, "[w]hile the 'superior officer' may not testify, defendant is entitled to the information to conduct his own investigation into whether racial bias was systemic or merely confined to the 'superior officer.'" Id. at 48. Thus, because R.B. was the lead detective on the case, it is irrelevant for discovery reasons that the State does not intend to call him as a witness. Therefore, the court misapplied its discretion in determining that the records did not have to be turned over solely because the State was not inclined to call R.B. as a witness.

The court never had a full hearing on the matter, never determined if the material the State is withholding is plainly exculpatory and impeachment evidence, nor did it decide if the information turned over in the letter was sufficient to satisfy the State's obligations under Brady/Giglio. Moreover, the State never had the opportunity to fully brief the matter. Therefore, we vacate the order and remand the matter for further fact-finding and analysis. On remand, the court may decide that an in-camera review of the investigative records is necessary to make those determinations.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12 · A-1603-25