**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0542-19

LENORE N. ZANGRILLI,

     Plaintiff-Appellant,

v.

JASON D. ZANGRILLI,

     Defendant-Respondent.

_____

     Argued October 13, 2021 – Decided July 29, 2022

     Before Judges Currier, DeAlmeida and Smith.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-1553-11.

     David L. Disler argued the cause for appellant (Porzio, Bromberg & Newman, PC, attorneys; Pamela M. Kapsimalis, of counsel; David L. Disler, of counsel and on the brief; Matthew J. Donohue, on the brief).

     Respondent has not filed a brief.

PER CURIAM

Plaintiff Lenore N. Zangrilli appeals from the August 22, 2019 order of the Family Part granting defendant Jason D. Zangrilli's motion for a reduction of his alimony and child support obligations. We affirm.

I.

The parties were married in 1994 and have three children. During the marriage, defendant was employed as a creative director of marketing in New York City, earning between $157,000 and $285,000 annually. In December 2011, defendant was involuntarily terminated from his position. He continued to work in his field on a freelance basis and by operating a consulting business. Plaintiff did not work during the marriage until she obtained employment in 2012 as a client services representative, earning $44,000 annually.

The parties divorced on January 3, 2013. A judgment of divorce incorporated the terms of the parties' property settlement agreement (PSA). Pursuant to the PSA, for purposes of calculating alimony and child support, defendant's imputed income is $150,000 annually and plaintiff's imputed income is $40,000 annually, although she was unemployed at the time she signed the agreement. Based on these amounts, defendant agreed to pay plaintiff alimony for fifteen years at $544.87 per week during 2013 and $705.12 per week for the

2

remainder of the term. He also agreed to pay child support of $314 a week during 2013 and $338 per week starting in 2014 and until emancipation.

The PSA contains two provisions with apparently conflicting terms. One paragraph of the agreement states:

> [I]n the event that [defendant] secures employment earning an actual gross income of less than $150,000 per year, [defendant's] alimony obligation shall not decrease and a gross income of $150,000 shall be imputed to [defendant] for the purposes of calculating alimony. However, in the event that [defendant] secures employment earning an annual gross income exceeding $150,000 per year, [defendant's] alimony obligation shall be modified.

However, on the following page, the PSA provides that a substantial change in circumstances would permit either party to seek modification of alimony. The agreement states:

> The parties acknowledge that the case of Lepis vs. Lepis, 83 N.J. 139 (1980) has been explained to them. The parties acknowledge that they understand that a substantial change of circumstances would permit either party to make an application to a [c]ourt of competent jurisdiction to modify the alimony provisions set forth in this agreement. Neither party has waived his or her right to seek a modification of alimony as provided for under the case of Lepis.

A-0542-19

The parties made handwritten, initialed modifications to the paragraph immediately following this provision, as well as to another paragraph on the same page preceding this provision.

On October 3, 2013, the trial court found defendant was in violation of litigant's rights for failing to pay alimony and child support. At the time, his outstanding obligations amounted to $19,393.89.

Defendant subsequently moved for modification of his support obligations based on a reduction in his income. In support of his application, defendant stated that after his 2011 termination he was unable to secure a position in advertising due to a change in the job market. He claimed the tasks he performed in his prior position had been outsourced to robotics and that he "aged out" of the field. He detailed his financial situation and efforts to find employment in his prior field. Defendant certified that he submitted more than 600 job applications between December 2011 and June 2017 and attended seminars and continuing education programs in his field before changing careers.

He certified that he obtained employment as a truck driver in October 2017, in part because the position did not require extensive training and offered more stability than advertising. His anticipated income as a truck driver is between $54,600 and $65,520 annually. He requested the court impute annual

4

income to him of $60,000 for the purpose of recalculating his support obligations. He also provided his tax returns from 2012 to 2016 and certified that he had filed for bankruptcy during that period. Defendant certified that he had liquidated his savings and was living with his aunt, had $556.13 in his checking account, and $16,500 in credit card debt. He also certified that he depleted his retirement accounts, life insurance, and stocks.

Defendant retained an expert who prepared a vocational evaluation and earning capacity assessment. The expert opined that defendant:

> has made a successful transition from his prior occupation to an unrelated occupation . . . [which] was necessitated by his lack of work and earnings in his prior occupation . . . due in large measure to technological changes in the advertising industry and the limited number of opportunities presently and projected for the future in this field. Although his current occupation is lower paying than his prior creative work, it is steadier work with ample opportunity for sustained employment and wage growth over time.

The expert recommended defendant continue working as a truck driver.

The trial court issued an order denying defendant's application without a plenary hearing. The court determined defendant had not made a prima facie showing of changed circumstances under Lepis. While recognizing that defendant had applied for positions, the court found that his proofs were for a

limited period and that he had not proven a meaningful effort to improve his chances and ability to find employment in advertising.

We reversed. Zangrilli v. Zangrilli, No. A-3815-17 (App. Div. Nov. 9, 2018). We concluded defendant made a prima facie showing of a change in circumstances and remanded for a plenary hearing after discovery to determine whether he made sufficient efforts to obtain employment in advertising, or another higher-paying field. Id., slip op. at 9.

In addition, we addressed the conflicting provisions of the PSA with respect to the modification of defendant's support obligations in light of changed circumstances, an issue not raised by the parties in the trial court. We held that:

> As part of the plenary hearing the court may, if it sees fit, also determine the intent of the parties in entering into a PSA that seems to preclude a reduction of support based on a reduction of income in one paragraph, while describing the parties' agreed-upon right to seek modification of alimony based on a "significant change of circumstances." In the unlikely event a Lepis wavier was intended, see Morris v. Morris, 263 N.J. Super. 237, 239-40 (App. Div. 1993), the court need not determine whether a sufficient change in circumstances exists to modify support. See also Ordukaya v. Brown, 357 N.J. Super. 231, 236 (App. Div. 2003) ("plaintiff waived any claim for support and agreed to an 'anti-Lepis' provision precluding any claim for change in circumstances supporting a claim for alimony.").

> [Id., slip op at 9-10.]

6

On remand, the trial court held three days of hearings, at which the parties were the only witnesses. On August 22, 2019, the court issued a written opinion granting defendant's motion. The court rejected plaintiff's argument that inclusion of the provision stating the parties had not waived their Lepis rights in the PSA was an oversight. In addition, the court noted that plaintiff, who was represented by counsel when defendant moved for a modification, did not argue that he had waived his right to do so in the PSA. The court apparently considered plaintiff's failure to raise the argument as evidence she believed the parties had not effectuated a waiver of their rights under Lepis.

The trial court made no findings with respect to defendant's intent when he executed the PSA. However, given defendant's application for a modification of his support obligations, it appears the trial court proceeded on the assumption that defendant intended to preserve his rights under Lepis when he executed the PSA. In the absence of proof that both parties intended to waive their rights under Lepis, the court concluded the PSA did not effectuate such a waiver.

On the merits of defendant's application, the court found he made sufficient efforts to find comparable employment in advertising, or another high-paying field, before changing professions and seeking a downward modification in his support obligations. The court based its findings on what is described as

7

"extensive and detailed proof . . . of his efforts to obtain new, higher paying employment."  In addition, the court found defendant did not limit his employment search to the creative field, having provided proofs of numerous applications to positions in other occupations.

The court imputed to defendant annual income of $65,000 and determined that plaintiff's imputed annual income of $40,000 would remain in place.  Based on these figures, the court set defendant's alimony obligation at $160.25 per week, effective the date he filed his motion for a modification.  The court also directed defendant to pay $50 a week toward arrears.  The court set defendant's child support obligation at $189 per week, with an additional $50 a week toward arrears.  An August 22, 2019 order reflects the court's decision.[1]

This appeal follows.  Plaintiff argues that the trial court: (1) abused its discretion by making findings of fact inconsistent with, and not supported by, competent evidence in the record; (2) improperly shifted the burden of proof to plaintiff; (3) failed to consider the burden on plaintiff of reducing defendant's financial obligations; and (4) negated specific provisions of the PSA prohibiting the reduction of defendant's imputed income below $150,000.

---

[1]  On September 25, 2019, the trial court recalculated defendant's child support obligation to $174 per week to account for taxable alimony paid by defendant. The court continued the $50 per week payment towards arrears.

II.

Our review of a Family Part's order is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "[W]e do not overturn those determinations unless the court abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004). We must accord substantial deference to the findings of the Family Part due to that court's "special jurisdiction and expertise in family matters . . . ." Cesare, 154 N.J. at 413.

We must defer to the judge's factual determinations, so long as they are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). This court's "[a]ppellate review does not consist of weighing evidence anew and making independent factual findings; rather, [this court's] function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999) (citing State v. Johnson, 42 N.J. 146, 161 (1964)). We review de novo the court's legal conclusions. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In addition, this court "must give deference to those findings of the trial judge which are substantially influenced by his or her opportunity to hear and see the witnesses and have the 'feel' of the case, which [this court does] not enjoy upon appellate review." State ex rel. D.M., 451 N.J. Super. 415, 424 (App. Div. 2017) (quoting State ex rel. S.B., 333 N.J. Super. 236, 241 (App. Div. 2000)).

There must be "deference to the trial court's credibility determinations[,]" N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007), "because it 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" City Council of Orange Twp. v. Edwards, 455 N.J. Super. 261, 272 (App. Div. 2018) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

A.

We begin with plaintiff's challenge to the trial court's conclusion that the parties did not effectuate a waiver of their Lepis rights in the PSA. The settlement of matrimonial disputes is encouraged and highly valued in our court system. Quinn v. Quinn, 225 N.J. 34, 44 (2016) (citing Konzelman v. Konzelman, 158 N.J. 185, 193 (1999)). Settlement agreements resolving matrimonial disputes are governed by basic contract principles and, as such, courts should discern and implement the parties' intent. J.B. v. W.B., 215 N.J.

10

305, 326 (2013).  When interpreting a PSA, "[t]he court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007).

The court must "ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain." Celanese Ltd. v. Essex Cnty. Imp. Auth., 404 N.J. Super. 514, 528 (App. Div. 2009).  Moreover, if the "terms of the contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 187-88 (App. Div. 2017).

Changed circumstances that might give rise to a modification of a party's support obligations under Lepis include a change in the parties' financial circumstances.  Spangenberg v. Kolakowski, 442 N.J. Super. 529, 536 (App. Div. 2015).  However, the parties may, in exchange for a fixed payment, execute a settlement agreement with a so-called anti-Lepis provision that reasonably limits the circumstances that may qualify as a change in circumstances warranting modification of a party's financial obligations.  Quinn, 225 N.J. at 49-50.  Anti-Lepis clauses do not offend public policy and are enforceable when

A-0542-19

entered "with full knowledge of all present and reasonably foreseeable future circumstances" that in the unusual case might give rise to a Lepis modification of their agreement. Morris, 263 N.J. Super. at 241.

The ambiguity in the parties' PSA is readily apparent. One provision fixes defendant's imputed annual income at $150,000 and expressly disallows him to seek a reduction in his financial obligations if he secures employment that earns less than that amount. A provision on the following page of the agreement, however, provides that neither party waives their right to seek a modification of alimony based on a substantial change in circumstances under Lepis.

We see no error in the trial court's rejection of plaintiff's argument that the two provisions should be read together to mean that defendant's annual imputed income is fixed at $150,000, even if he earns less than that amount, but plaintiff may seek an upward modification of alimony under Lepis if defendant earns more than that amount. The flaw in this argument is that the provision preserving the right to seek relief under Lepis stated that "[n]either party" waives the right to seek a modification based on a substantial change in circumstances. The provision is not limited to the preservation of plaintiff's right to seek an upward modification. It expressly includes defendant's right to seek a

12

modification, which would include reduction based on a change in his income. The two provisions cannot be harmonized in the way plaintiff suggests.

We turn, therefore, to the question of what the parties intended when they agreed to the conflicting provisions. Although the trial court made no findings of fact with respect to defendant's intent, he testified that he was unemployed when he signed the agreement. According to defendant, he thought he could find a job in advertising with an annual salary of $150,000, which is why he agreed to the imputed annual income in the PSA. He also testified that he would not have signed the agreement if it did not contain the provision preserving his right to seek a modification of his support obligations under Lepis in the event there was a substantial change in circumstance that prevented him from securing such a position. He did not explain, however, what he intended when he agreed to the provision of the agreement that provided that his imputed annual income of $150,000 would remain in place even if he earned less than that amount.

Plaintiff testified that she too was unemployed when she signed the PSA. According to plaintiff, she intended to agree to an imputed income for defendant and herself that were not subject to modification under Lepis, except for the potential upward modification of defendant's support obligations if he earned more than $150,000 annually. She testified that she agreed to these terms

because the income imputed to defendant was less than he had been earning before he was terminated from his advertising position. She testified that she believed the paragraph preserving both parties' rights to seek a modification under Lepis was included in the PSA as an oversight. She conceded that she did not raise this argument in opposition to defendant's motion for a modification.

We agree with the trial court's rejection of plaintiff's claim that the paragraph preserving the parties' Lepis rights was, in effect, a boilerplate provision mistakenly left in the contract. The provision appears immediately after the paragraphs of the PSA establishing defendant's imputed annual income and financial obligations. The parties, who were represented by counsel, made handwritten modifications, which they initialed, to the paragraph immediately after the Lepis preservation provision, as well as to another paragraph on that page of the agreement. The circumstances of the execution of the agreement strongly suggest that the parties, aided by their counsel, reviewed the agreement carefully. The record contains no evidence that the unequivocal Lepis preservation provision was included in the agreement in error and overlooked by the parties at the time they signed the PSA.

The record does not convincingly establish what the parties intended when they agreed to the conflicting provisions in the PSA. One plausible

14

interpretation of the agreement is suggested by defendant's testimony: that he agreed to an imputed annual income of $150,000, which would not be reduced, provided he was employed in the advertising industry. However, defendant intended to preserve the right to seek a modification of his financial obligations in the event of a change in circumstances that prevented him from obtaining employment in that field. There is, of course, no evidence in the record that plaintiff had a meeting of the minds with defendant on that interpretation of the conflicting provisions.

However, despite the ambiguity in the record with respect to the parties' intent when executing the PSA, we are confident that the record does not contain sufficient credible evidence that the parties executed a waiver of their rights under Lepis. The only provision of the agreement that cites Lepis by name, and includes an acknowledgment by the parties that the holding of that case had been explained to them, expressly preserves their rights to seeks a modification based on changed circumstances. In addition, in the section of the PSA entitled "Waiver of Claims" there is no mention of Lepis. Absent an unequivocal provision of the agreement waiving the parties' rights under Lepis, we are satisfied that the trial court did not err when it considered defendant's motion for a modification.

A-0542-19

B.

The court is "authorized to modify alimony and support orders 'as the circumstances of the parties and the nature of the case' require." Halliwell v. Halliwell, 326 N.J. Super. 442, 448 (App. Div. 1999) (quoting N.J.S.A. 2A:34-23). A party seeking a modification of his alimony and child support obligations must demonstrate changed circumstances "as would warrant relief." Lepis, 83 N.J. at 157. The obligor's ability to pay is a central consideration when determining if relief is warranted. Miller v. Miller, 160 N.J. 408, 420 (1999).

We review the trial court's modification decision for an abuse of discretion. Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015). We must "give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Donnelly v. Donnelly, 405 N.J. Super. 117, 127 (App. Div. 2009) (quoting Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006)). Our review of the trial court's discretionary determination regarding defendant's support obligations "is limited to whether the court made findings inconsistent with the evidence or unsupported by the record, or erred as a matter of law." Reese v. Weis, 430 N.J. Super. 552, 572 (App. Div. 2013).

We have carefully reviewed the record and find sufficient credible evidence supporting the trial court's decision to reduce defendant's financial

obligations to plaintiff. The trial court, which had the opportunity to evaluate defendant's testimony, determined that he made sufficient efforts to find employment in the advertising field at or above the compensation level imputed to him in the PSA, that he was unsuccessful in obtaining such a position, and was entitled to a reduction in his imputed income based on a change in circumstances that resulted in his employment in the trucking industry. We see no basis on which to disturb the trial court's order reducing defendant's financial obligations to plaintiff to reflect the change in his imputed annual income.

To the extent we have not specifically addressed any of plaintiff's remaining claims, including her argument with respect to the trial court shifting the burden of proof, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION